# CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

Patrick Henry Hospital, Inc.

v.

Commissioner,
Department of Health, et al.

March 31, 1997

Case Nos. 9627708C-03, 9627709C-03

BY JUDGE RANDALL G. JOHNSON

These are appeals under the Administrative Process Act (APA), Va. Code § 9-6.14:1 *et seq.*, from two case decisions of the Virginia Department of Health. The appellant is Patrick Henry Hospital, Inc., which is part of the Riverside Health System, which, through Patrick Henry and other entities, owns and operates numerous health care facilities in Virginia. In Case No. 9627708C-03, Patrick Henry applied for a certificate of public need to provide "subacute" care services at Riverside Regional Convalescent Center in Newport News, one of Patrick Henry's facilities. In Case No. 9627709C-03, Patrick Henry applied for a certificate of public need to transfer thirty nursing facility beds from Riverside Regional Convalescent Center to Patriots Colony in Williamsburg, another one of Patrick Henry's facilities. The Department denied the application in each case. While the Commissioner argues that the two applications are so interrelated as to be dependent on each other, and in spite of Patrick Henry's representations to the Department that it would not act on either application unless both were approved, it appears that the applications were filed separately, were decided by the Commissioner separately, and that the relationship of the applications to each other was not

cited by the Commissioner as a reason for denying either application. Accordingly, each application will be considered separately on these appeals.

## A. *Subacute Care Services*

Patrick Henry's first application was to provide subacute care services at Riverside Regional Convalescent Center in Newport News. This would be accomplished by "de-licensing" thirty beds at Riverside Regional Medical Center, Patrick Henry's acute care hospital in Newport News, and simultaneously licensing thirty subacute care beds at Riverside Regional Convalescent Center, a long-term care, or nursing home, facility. While the Commissioner's letter denying the application is lengthy and detailed (fifteen single-spaced pages), four basic reasons are given. First, the Commissioner found that there was no evidence of a public need for the proposed project. Second, the proposed project would be unnecessarily disruptive of the Convalescent Center, which is currently experiencing high utilization and apparently functioning well. Third, denial was recommended by the Eastern Virginia Health Systems Agency, a recommendation of that agency being a requirement under Va. Code § 32.1-102.3, which governs applications for certificates of public need. And fourth, Patrick Henry should exhaust other means of reducing the length of patient stays at Riverside Regional Medical Center, if the length of patient stays is a problem, before establishing additional medical facilities.

Similarly, Patrick Henry gives four reasons why the Commissioner's decision is erroneous. First, Patrick Henry argues that since the State Medical Facilities Plan does not contain specific criteria by which to review an application for providing subacute care services, the application must be approved.[1] Second, Patrick Henry states that the rules by which the Department reviewed the application were never subject to public review or comment and thus violate the APA. Third, Patrick Henry states that the Commissioner's decision is "warped" by a misconception of the principles by which acute care hospitals and long-term care hospitals are paid, thus tainting the Commissioner's decision. And fourth, Patrick Henry says that there is not

---

[1] Patrick Henry also cited the State Health Plan as not containing criteria for reviewing subacute care services. Va. Code § 32.1-102.3(A), however, which is the statute relied on by Patrick Henry in this part of its argument and which will be discussed in more detail below, was amended in 1993 to remove the reference to the State Health Plan. Only the State Medical Facilities Plan is now referred to in the statute.

substantial evidence in the record to support the Commissioner's findings and conclusions. Each of Patrick Henry's arguments will be discussed separately.

### 1. *Absence of Subacute Care Criteria*

The issuance of certificates of public need is governed by Chapter 4 of Title 32.1 of the Code of Virginia. Section 32.1-102.3(A) provides, in pertinent part:

> Any decision to issue or approve the issuance of a certificate shall be consistent with the most recent applicable provisions of the State Medical Facilities Plan; however, if the Commissioner finds, upon presentation of appropriate evidence, that the provisions of such plan are inaccurate, outdated, inadequate or otherwise inapplicable, the Commissioner, consistent with such finding, may issue or approve the issuance of a certificate and shall initiate procedures to make appropriate amendments to such plan.

Subacute care facilities are not recognized as a separate type of medical service by the State Board of Health, the agency responsible for promulgating the State Medical Facilities Plan referred to in the above statute. Consequently, the State Medical Facilities Plan contains no criteria for reviewing applications for subacute care facilities. It is Patrick Henry's position that the absence of such criteria compels the Commissioner to approve its application; that is, that the "*may* issue or approve" in the statute means "*shall* issue or approve." The court disagrees.

Simply put, the absence of criteria for a proposal presented to the Department for a certificate of public need cannot, by itself, translate into a compulsory issuance of a certificate. If it did, the most improper and even ridiculous proposal would have to be approved since the more improper or ridiculous a proposal is, the more likely it is that the Board of Health would not have anticipated anyone's making it. Indeed, under the logical extension of Patrick Henry's argument, a proposal to establish *any* type of facility not specifically recognized by the State Medical Facilities Plan would have to be approved by the Commissioner. This simply is not the law, and the court flatly rejects Patrick Henry's argument that it is.

The real issue in this case, as it is in all such cases, is whether there exists a public need for the proposal. If a public need exists, then Va. Code § 32.1-102.3(A) allows the Commissioner to approve a proposal even though the State Medical Facilities Plan does not contain specific criteria by which the

proposal can be properly reviewed. On the other hand, if a public need does not exist, it makes no difference what criteria is used; a certificate cannot be granted. The Commissioner found that no public need exists for Patrick Henry's proposal. The court finds that decision to be supported by the record.

In making its application, Patrick Henry asserted that there were 546 patients referred by Riverside Regional Medical Center to Riverside Rehabilitation Institute, another nursing home facility owned by Patrick Henry in Newport News, but who were not admitted to Riverside Rehabilitation because they did not meet Medicare admissions criteria for rehabilitation services. Patrick Henry argued that those patients, and others like them, would benefit from the thirty proposed beds at Riverside Regional Convalescent Center. As the Commissioner correctly pointed out, however, Patrick Henry failed to show that any of those 546 patients were not admitted to some other facility in the Newport News area, including Riverside Regional Convalescent Center itself. In fact, the Commissioner specifically named Riverside Regional Convalescent Center and four other "specialty heavy care" facilities in the peninsula and Norfolk area which could provide the services sought for the 546 patients referred to by Patrick Henry. The court does not know if that list is exclusive, but even if it is, Patrick Henry failed to show that the facilities on the list are not adequate to handle the number of eligible patients in the relevant area.

In addition, the Commissioner found, and the record shows, that Patrick Henry's proposal to designate thirty beds at Riverside Regional Convalescent Center as subacute care beds would displace thirty well-utilized nursing facility beds that are currently serving long-term care patients at that facility. Patrick Henry did not show that such displacement is a more cost-effective way of delivering services at the Convalescent Center. This is especially true when considered in light of the relatively low cost of the nursing home beds when compared to the subacute care beds, and the fact that essentially the same staff will be used. In short, Patrick Henry failed to carry its burden of demonstrating a public need for its proposal, and the Commissioner's finding that no public need exists is correct.

## 2. Public Review and Comment

In light of the court's holding on Patrick Henry's first argument, Patrick Henry's second argument is easily disposed of. Va. Code § 32.1-102.3(A), set out above, provides that under the circumstances set out in the statute, the Commissioner "may issue or approve the issuance of a certificate and shall initiate procedures to make appropriate amendments to such [State Medical

Facilities] plan." While Patrick Henry argues that the Commissioner erred by not following appropriate procedures to amend the State Medical Facilities Plan, the plain language of the statute is that such amendments are to be made only if the Commissioner issues or approves the issuance of a certificate. Since no certificate was issued here, no amendments were appropriate. Thus, all of Patrick Henry's arguments about the appropriate procedure to be followed in making such amendments, including provision for public review and comment, are without merit. The Commissioner did not err in this regard.

### 3. Interpretation of Federal Reimbursement Laws

Patrick Henry's third argument is that the Commissioner's decision is "warped" by a misconception of the principles by which acute care hospitals and long-term care hospitals are paid, thus tainting the Commissioner's decision. Specifically, Patrick Henry argues that the Commissioner improperly interpreted federal Medicare reimbursement law in such a way as to find that Patrick Henry was "in some way attempting to manipulate the reimbursement system through this application." Brief in Support of Petition for Appeal, at 24. The court does not believe that the Commissioner's finding of such manipulation, if indeed such a finding was actually made by the Commissioner, was a necessary part of the Commissioner's decision. Patrick Henry was not prejudiced by it.

As previously discussed, the Commissioner found, and this court has now affirmed, that no public need exists for Patrick Henry's proposal now under consideration. In making his decision, the Commissioner discussed many things. Indeed, as also previously mentioned, the Commissioner's decision letter is fifteen single-spaced typewritten pages. Among the items discussed is the fact that there is an under-utilization of beds at Riverside Regional Medical Center, one of Patrick Henry's acute care facilities, and a full utilization of beds at Riverside Regional Convalescent Center, one of Patrick Henry's long-term care, or nursing home, facilities. In discussing what he considered to be a motivation for Patrick Henry's proposal to "de-license" thirty beds at the under-utilized acute care facility and simultaneously license thirty beds at the fully-utilized nursing home, the Commissioner commented that such action would bestow a financial benefit on Patrick Henry; that is, Patrick Henry would do away with the expense of maintaining thirty acute care beds that are not being used while creating thirty subacute care beds in a facility that has historically been fully used. In making his comments, the Commissioner was, at most, speculating about the real reason for Patrick Henry's application. The fact remains, however, that the only real issue before the Commissioner was,

and the only real issue before this court is, whether a public need exists for the proposal. Having found public need not to exist, all of the Commissioner's comments about Patrick Henry's real motivation are superfluous and irrelevant. They had no effect on the Commissioner's decision, and they have no effect on the court's decision.

Because of the court's ruling in this regard, the court does not decide whether the Commissioner correctly interpreted federal Medicare reimbursement law. It is simply a "nonissue."

## 4. *Evidential Support for the Commissioner's Decision*

Patrick Henry's final argument for reversing the Commissioner's decision is that there is not substantial evidence in the record to support it. Again, the court disagrees.

As has been said several times already, the only real issue with regard to Patrick Henry's proposal to establish thirty subacute care beds at Riverside Regional Convalescent Center is whether a public need exists for such action. The evidence in the record makes it clear that no public need exists. For example, and as also discussed earlier, the Commissioner found that the 546 patients referred to by Patrick Henry as being ineligible for services at Riverside Rehabilitation Institute could have been served by five other facilities in the Newport News area, including Riverside Regional Convalescent Center as presently equipped and staffed. The Commissioner also found that the proposed project would not significantly alter the geographic or financial accessibility of residents in the area and that the medical facilities in the area are already adequate to meet the needs of the affected population without the addition of the thirty beds proposed by Patrick Henry. While Patrick Henry did present evidence in conflict with each of these findings, that is not enough. As long as there is substantial evidence to support the Commissioner's findings, those findings must be affirmed. Said another way, after considering the record as a whole, the court cannot say that "a reasonable mind would necessarily come to a different conclusion" than did the Commissioner. *See Va. Real Estate Comm. v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123 (1983) ("[T]he court may reject the agency's findings of fact 'only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion'." The quotation inside the quote from *Bias* is from B. Mezines, *Administrative Law* § 51.01(1981). The emphasis is in the original.)

In summary, the Commissioner's findings with regard to Patrick Henry's application for a certificate of public need to establish thirty subacute care beds

at Riverside Regional Convalescent Center was based on a correct interpretation of Va. Code § 32.1-102.3(A), did not involve the promulgation or amendment of agency rules or regulations, was not based on a misinterpretation of federal Medicare reimbursement law, and has substantial evidentiary support in the record. The Commissioner's decision is affirmed.

## B. *Transfer of Nursing Home Beds to Williamsburg*

Patrick Henry's second application for a certificate of public need was to transfer thirty nursing home beds from Riverside Regional Convalescent Center to its facility in Williamsburg called Patriots Colony. As stated at the beginning of this opinion, while this second application is undeniably related to the first — thirty beds transferred from Riverside Regional Medical Center to Riverside Regional Convalescent Center, and thirty beds transferred from Riverside Regional Convalescent Center to Patriots Colony — the applications themselves are separate. They must be decided separately.

The Commissioner gave five reasons for denying Patrick Henry's application. First, the Eastern Virginia Health Systems Agency, which again is the agency charged by Va. Code § 32.1-102.3 with making recommendations on these types of applications, recommended denial. Second, the Commissioner found that the charges to patients for services at Patriots Colony would be significantly higher than for patients at Riverside Regional Convalescent Center. Third, the Commissioner found that the project did not comply with the requirements of the State Medical Facilities Plan. Fourth, the Commissioner found that there was no imbalance of nursing home beds within Planning District 21, the district in which both Patriots Colony and Riverside Regional Convalescent Center are located, which would be corrected by the proposed transfer. And fifth, the proposed transfer would increase the overall cost to the public for nursing home care in Planning District 21. Patrick Henry contends that none of the Commissioner's reasons are supported by substantial evidence.

## 1. *Recommendation of the Eastern Virginia Health Systems Agency*

Va. Code § 32.1-102.3(B)(1) requires the Commissioner to consider the "recommendation and reasons therefor of the appropriate health systems agency." For Patrick Henry's application, that agency is the Eastern Virginia Health Systems Agency. That agency recommended that the application be denied. While Patrick Henry challenges the reasons for the agency's denial, it cannot seriously contend that the fact of the recommendation itself is not

supported by the record. A recommendation was made, and that recommendation was that the application be denied. The Commissioner's finding that the agency recommended denial, then, is unquestionably supported by the record. The reasons for the agency's recommendation, being the same reasons as those relied upon by the Commissioner, will be discussed below.

## 2. *Charges for Services at Patriots Colony*

Both the Eastern Virginia Health Systems Agency and the Commissioner found that if the thirty nursing home beds were transferred from Riverside Regional Convalescent Center to Patriots Colony, the costs for services attributable to those beds would be significantly higher at Patriots Colony than they are at Riverside Regional. It is Patrick Henry's contention that those findings were based on incorrect or outdated data, and that the Commissioner's decision based on such data is arbitrary and capricious. The court disagrees.

The data involved in the agency's analysis, the Commissioner's decision, and the parties' written submissions to this court is such that it does not lend itself to a brief and coherent discussion here. Generally, the dispute concerns cost projections provided to the agency by Patrick Henry and the timing and completeness of those projections. It is the Commissioner's position that the agency and Commissioner made their analyses based on constantly changing data provided by Patrick Henry, a "moving target" of data, which made it impossible for the Commissioner to make the findings argued for by Patrick Henry. On the other hand, Patrick Henry asserts that regardless of what information was given to the agency originally, the Commissioner had its final projections before making his final decision, even if not at the informal fact-finding conference. Actually, what Patrick Henry seems to be saying is that the Commissioner was bound to accept its final submission of data to the exclusion of its earlier submissions, a proposition that finds no support in statutory, regulatory, or case law. Having submitted several inconsistent and conflicting sets of cost projections to the agency and Commissioner, Patrick Henry cannot now complain because the Commissioner relied on a set other than the one Patrick Henry finally put forth. In fact, the situation here is no different from a party in a personal injury action testifying on direct examination that his light was green, but on cross-examination saying that it was red. Even if he again says on redirect examination that the light was green, the jury does not have to accept his last statement. There is evidence to support whatever finding the jury makes.

Here, the agency and Commissioner were faced with conflicting evidence, even though it was all submitted by the same party. The agency and Commissioner chose to accept the data which they accepted. That data showed a significant increase in the cost of service if the beds were transferred to Patriots Colony. Because there is data in the record to support that finding, even though Patrick Henry now wants that data to be ignored, the Commissioner's decision in that regard cannot be reversed.

### 3. Medical Facilities Plan

The third reason given by the Commissioner for denying the transfer of the thirty beds was his finding that such transfer did not comply with the requirements for relocation of beds as set forth in the State Medical Facilities Plan. This was also one of the reasons relied on by the Eastern Virginia Health Systems Agency for recommending denial. Again, Patrick Henry asserts that such reason is not supported by substantial evidence in the record. Again, the court disagrees.

Among the requirements of the State Medical Facilities Plan are the requirements that a proposed plan meet certain standards regarding acceptability, continuity, quality, availability, and cost. Both the Eastern Virginia Health Systems Agency and the Commissioner found that Patrick Henry's proposal met the applicable standards for acceptability, continuity, and quality. They also found that the availability standard did not apply because the overall number of nursing home beds in the district would remain the same. They did find, however, that the proposed transfer did not meet the cost standard.

According to the State Medical Facilities Plan, the cost of new construction should be comparable with or lower than state, regional, and planning district costs for similar facilities. Based on data submitted by Patrick Henry, the agency and the Commissioner found that the proposed costs of establishing the thirty beds at Patriots Colony would be higher than the costs of the existing beds at Riverside Regional. As was true with the projected cost for services at Patriots Colony, however, Patrick Henry argues that the agency and Commissioner relied on erroneous data and that the last projections provided by Patrick Henry showed that the costs at Patriots Colony would be comparable to or less than the costs at other area facilities. Again, the agency and Commissioner were faced with different data, all submitted by Patrick Henry, and had a right to choose the data they thought was appropriate. Unfortunately for Patrick Henry, they chose to rely on data which did not support Patrick Henry's application. The fact remains, however, that such data

was submitted by Patrick Henry, is in the record, and thus constitutes substantial evidence in support of the Commissioner's decision. The decision will not be reversed on this ground.

## 4. Distribution of Nursing Home Beds

The Commissioner found that the distribution of nursing home beds within Planning District 21 is not demonstrably unbalanced, making a redistribution of such beds unnecessary. Patrick Henry argues that such finding is arbitrary and capricious because the relevant standard provides that "*in the case of competing applications*, preference will be given to proposals which correct any maldistribution of beds within a planning district." 12 VAC 5-360-30(D) (emphasis by Patrick Henry).[2] It is Patrick Henry's position that since its application did not compete with any others, the Commissioner erred by considering the distribution of nursing home beds within Planning District 21. Patrick Henry's argument is without merit.

First, there is nothing about the above language in 12 VAC 5-360-30(D) to suggest that the distribution of nursing home beds within a planning district cannot be considered by the Commissioner when only one application has been submitted. All the quoted part of the regulation says is that preference must be given to an application that corrects a distribution imbalance. It does not say that the distribution of beds is otherwise not to be considered.

Second, and more important, is that what must be remembered in all of these types of cases is that the paramount issue is always one of public need. If a public need does not exist for a proposed project, the Commissioner has no discretion; the application must be denied:

> § 3.1-102.3. *Certificate required; criteria for determining need.* — A. No person shall commence any project without first obtaining a certificate issued by the Commissioner. No certificate may be issued unless the Commissioner has determined that a public need for the project has been demonstrated.

Among the things that the Commissioner *must* consider in determining whether a public need exists is "[t]he need that the population served or to be served by the project has for the project." *Id.* The distribution of nursing home beds within a planning district is clearly relevant to that consideration. Indeed,

---

[2] "VAC" refers to the Virginia Administrative Code. 12 VAC contains regulations of the Department of Health.

the court cannot imagine that if the evidence was that *every* nursing home bed in Planning District 21 was in Newport News and *no* nursing home beds were in Williamsburg, Patrick Henry would not argue that its application should be approved in order to accomplish a better distribution of nursing home beds within the district. Unquestionably, that argument would be relevant and appropriate. By the same token, the fact that nursing home beds are presently *properly* distributed within the district is also a relevant and appropriate fact to be considered by the Commissioner. It touches directly on whether there is a public need for the project. There being substantial evidence in the record that there is no imbalance of beds in the district, the Commissioner's decision on that point is not erroneous.

## 5. *Increased Costs*

The final reason given by the Commissioner for his denial of a certificate was his finding that the proposed transfer of nursing home beds would increase the overall cost to the public for nursing home care in Planning District 21 without providing a corresponding amount of public benefits. This reason, like reasons 2 and 3 above, was based on conflicting cost data provided by Patrick Henry. For the same reasons the court rejected Patrick Henry's challenges to those findings by the Commissioner, the court rejects this challenge. The Commissioner's findings are supported by substantial evidence and will be affirmed.

### Conclusion

For all of the reasons set out above, the court concludes that the Commissioner's decision in Case No. 9627708C-03, regarding the establishment of thirty subacute care beds at Riverside Regional Convalescent Center in Newport News, and his decision in Case No. 9627709C-03, regarding the transfer of thirty nursing home beds from Riverside Regional Convalescent Center to Patriots Colony in Williamsburg, are correct. They are affirmed.