COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Coleman and Senior Judge Cole
Argued at Richmond, Virginia


CHARLOTTE D. MEADOWS
                                            MEMORANDUM OPINION* BY
v.   Record No. 1214-97-2               JUDGE JAMES W. BENTON, JR.
                                              JANUARY 27, 1998
VIRGINIA RETIREMENT SYSTEM


            FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                            Jay T. Swett, Judge

            Robert L. Flax for appellant.

            John Patrick Griffin, Assistant Attorney
            General (Richard Cullen, Attorney General;
            Michael K. Jackson, Senior Assistant Attorney
            General, on brief), for appellee.


     The Virginia Retirement System ruled that Charlotte D.

Meadows failed to prove that her incapacity from work was "likely

to be permanent."  Code § 51.1-156(E).  On this appeal from a

circuit court judgment that affirms that decision, Meadows

contends that the record does not contain substantial evidence to

support the retirement system's decision.  We affirm the

judgment.

     From August 1974 until October 1994, Meadows was employed at

the University of Virginia Hospital as a clinical nutritionist.

In October 1994, she applied for disability benefits alleging

multiple medical problems including chronic fatigue syndrome,

sacroiliitis, fibromyalgia, allergic rhinitis and chronic sinus

     *Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

infection.  After a review of the medical and other records, the retirement system's medical board found that the data "are insufficient to suggest that [Meadows] is permanently disabled from performing the duties of her present occupation."  The medical board recommended that the retirement system deny Meadows' application.  See Code § 51.1-124.23.  When Meadows requested reconsideration of that decision, the medical board reviewed additional medical data that Meadows submitted and again found that she was not disabled for work.  Meadows appealed that decision.

In accordance with the provisions of the Administrative Process Act, see Code § 9-6.14.1, et seq., the retirement system designated a hearing officer to conduct a hearing and submit a recommendation.  See Code § 9-6.14:12.  Following a hearing at which Meadows was the only witness, the hearing officer considered the evidence, including her testimony and the medical records, and found "that . . . the evidence is not sufficient to show that . . . Meadows is physically incapacitated from the performance of her duties as a nutritionist."  Based on the hearing officer's findings, the director of the retirement system ruled "that the medical evidence has not proven that [Meadows'] incapacity is 'likely to be permanent,' as required by [Code §] 51.1-156E."  When Meadows appealed that decision to the circuit court, the trial judge affirmed the agency's decision.

The parties agree that Meadows bears "[t]he burden . . . to

designate and demonstrate an error of law" and that the issue of

law on this appeal is "the substantiality of the evidential

support for findings of fact."  Code § 9-6.14:17.  Thus, the

following principles govern our review:

> The standard of review is well defined
> under the VAPA and case decisions.  Where the
> issue is the substantiality of the evidential
> support for findings of facts, "the sole
> determination by the reviewing court . . . is
> whether there was substantial evidence in the
> agency record to support the agency
> decision."  "The phrase 'substantial
> evidence' refers to 'such relevant evidence
> as a reasonable mind <u>might</u> accept as adequate
> to support a conclusion.'"  "[T]he court may
> reject the agency's findings of fact 'only
> if, considering the record as a whole, a
> reasonable mind would necessarily come to a
> different conclusion.'"  This standard "is
> designed to give great stability and finality
> to the fact findings of an administrative
> agency."
>
> The determination of an issue of fact is
> to be made solely on the basis of the whole
> evidentiary record provided by the agency and
> the reviewing court is limited to that agency
> record.  "A reviewing court may not, however,
> use its review of an agency's procedures as a
> pretext for substituting its judgment for the
> agency on factual issues decided by the
> agency."  A reviewing court "must review the
> facts in the light most favorable to
> sustaining the [agency's] action," and "take
> due account of the presumption of official
> regularity, the experience and specialized
> competence of the agency, and the purposes of
> the basic law under which the agency has
> acted."

<u>Johnston-Willis, Ltd. v. Kenley</u>, 6 Va. App. 231, 262-63, 369

S.E.2d 1, 18-19 (1988) (citations omitted).

In pertinent part, the evidence before the hearing officer

proved that Meadows' duties as a clinical nutritionist included

providing patients with nutritional assessments, assessing patients' nutritional risks, determining patients' dietetic needs, and determining whether patients needed special feeding apparatus.  Meadows saw numerous patients located in different wings and different floors of the hospital.  She used a motorized cart to carry her materials with her.  In performing her job, Meadows consulted with doctors and nurses and also evaluated and observed the training of dietetic students.

On September 30, 1994, Meadows' supervisor noted that Meadows' quality of work "Does Not Meet Minimum Expectations" and indicated that Meadows would be removed from service if she did not improve.  The supervisor also noted that Meadows had been removed from all non-essential duties and that staff criticism outweighed praise.

Meadows testified that she was significantly fatigued at work and that she informed her supervisor of her daily fatigue. She testified that she had hip pain with any extended walking and was currently on an exercise plan and pool therapy which helped alleviate some of her pain.  She further testified that her cognitive abilities had deteriorated, that she would often forget things, and that she had difficulty concentrating on tasks.

The medical records established that Meadows saw a number of doctors for assessment of her physical and mental complaints. Her treating physician, Dr. Samuel D. Caughron, opined that Meadows had chronic fatigue syndrome, recurrent sinusitis,

sacroiliitis, and cervical nerve root impingement. He stated that chronic fatigue syndrome is "poorly understood" and that Meadows had "some areas of improvement and at times worsening which requires work adjustment." He opined, "I would expect her to be able to fulfill the duties required of her according to her job description if accommodations can be made." He recommended that she walk as little as possible and have two consecutive days of rest during the work week. He also reported that her sacroiliitis is chronic.

Upon a referral from Dr. Caughron, Dr. Paul C. Wilkins, a psychiatrist, examined Meadows and concluded that Meadows had an adjustment disorder with mixed emotional features. Robert Diamond, Ph.D., a neuropsychologist, also evaluated Meadows at Dr. Caughron's request and issued his report. His findings included the following:

> Neuropsychological evaluation was consistent with deficits in attention, sustained concentration, and motor speed . . . . Her pattern of deficits on neuropsychological testing was consistent with the performance of many patients with chronic fatigue. On the personality inventory there were indications of preoccupation with physical problems, and it is possible that her somatic symptoms will increase when distressed. There is also a potential that her symptoms of dysphoria and anxiety were under-reported.
>
> Test findings were discussed with the patient. She was encouraged to further discuss the possibilities of attempting a trial of antidepressant therapy with her physician. Her current psychotherapeutic efforts (individual and group) were strongly encouraged.

In a later report, Dr. Diamond opined that these deficits were permanent within the context of Meadows' chronic fatigue syndrome.  However, he further noted that he was not competent to address the likely permanence of her chronic fatigue syndrome.

Dr. John M. Carpenter, another treating physician, opined that Meadows suffered from chronic fatigue syndrome, chronic allergic rhinitis, and fibromyalgia.  He opined that Meadows' medical problems "may continue indefinitely," that her ability to be a clinical nutritionist was "severely impaired," and that her deficits were likely to be permanent.

At Dr. Carpenter's referral, Dr. Daniel Clauw, a rheumatologist, examined Meadows and reported as follows:

> I currently care for Charlotte Meadows. She suffers from both fibromyalgia and chronic fatigue syndrome.  These are debilitating illnesses characterized by severe fatigue and diffuse musculoskeletal pain, as well as a number of symptoms such as cognitive dysfunction.  I feel that Ms. Meadows is permanently disabled by these conditions.  It is not uncommon for either of these conditions to lead to disability, and although there are no objective abnormalities on x-rays or significant abnormalities on laboratory tests, these entities can frequently be much more disabling than conditions where there is evidence of these types of objective abnormalities.

In addressing Meadows' claim, and in particular the finding by Dr. Clauw, the medical board noted the following:

> Dr. Daniel Clauw, Assistant Professor, Division of Rheumatology, has accepted her complaints at face value and feels she is disabled on the basis of chronic fatigue syndrome and fibromyalgia.  The Board has not felt that these complaints justify the

- 6 -

conclusion of permanent disability and the present information submitted does not alter that viewpoint. It is noted that the information submitted by Dr. Clauw is that the applicant has a multitude of somatic complaints of which fatigue and musculoskeletal complaints are only a part. She has suffered from irritable bowel syndrome, daily headaches, she has been said to have "sacroiliitis" though this has not been documented radiographically. She has been on antidepressants.

On evaluation, the applicant was described as being alert, oriented and "in minimal distress." The physical examination revealed absolutely no abnormality. The presence of "trigger points" is noted in upper and lower extremities but this finding is virtually meaningless and is found in many anxious individuals.

In summary, we have an applicant who, with multiple somatic complaints, complains predominately now of musculoskeletal aches and pains, termed "fibromyalgia" and fatigue which is now expressed as "chronic fatigue syndrome." Neither of these is dignified by objective abnormalities confirmable by an independent examiner and the applicant is not separated in any objective way from the mass of the public of the same age in such a manner as would lead to a conclusion that she is incapacitated for work.

The evidence also proved that the retirement system's medical board referred Meadows to Dr. Ray Cendana, a psychiatrist, for another psychiatric evaluation. In pertinent part, Dr. Cendana reported the following:

It appears the symptoms about which she is complaining could be related to her chronic fatigue syndrome; however, there are no indications that would warrant her follow-up here in the psychiatric clinic. Also there are no indications for psychotropic medications at this time. From the interview conducted here in this office today, there is no evidence of cognitive impairment, although her history states otherwise.

> We feel there is no primary psychiatric diagnosis. Hence, there is no psychiatric diagnosis which permanently disables her.

Based upon this evidence, the hearing officer concluded that Meadows did not qualify for disability retirement benefits because the evidence did not prove that she was incapacitated from doing her job. The retirement system director accepted the findings and issued a decision concluding that Meadows had not proven that her incapacity was "likely to be permanent" as required by Code § 51.1-165(E)(ii).

Upon our review of the entire agency record, we conclude that the trial judge did not err in finding that the decision was supported by substantial evidence. Indeed, we cannot conclude that in "'considering the record as a whole, a reasonable mind would _necessarily_ come to a different conclusion'" than that reached by the agency. Virginia Real Estate Comm'n v. Bias, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (citation omitted).

The evidence clearly supports the hearing officer's findings that although Meadows' position as a nutritionist requires some physical stamina, it does not require the degree of effort that supports Meadows' claim that she is permanently incapacitated from her work. Meadows reports a multitude of complaints most of which relate to her claims of chronic fatigue and are subjective in nature. Indeed, a functional capacity evaluation report "revealed that [Meadows] was able to briefly perform all activities related to her job, her only limiting factor was her

subjective complaints of pain."  The evaluator found that although Meadows had "positive postural asymmetries with associated muscle guarding and tightness," these findings are "common in the general population and it is therefore difficult to explain why Ms. Meadows is unable to tolerate sedentary and light activities for periods of time required of her job." Meadows' evidence generally tended to establish somatic, subjective complaints of pain; however, as the medical board reported, none of Meadows' complaints are "objective abnormalities confirmable by an independent examiner."  Even Dr. Clauw noted "there are no objective abnormalities on x-rays or significant abnormalities on laboratory tests" to support Meadows' subjective complaints of pain.  Furthermore, the psychiatric reports indicate that while she may have an adjustment disorder and other difficulties, none of these permanently disables her.

Simply put, the record before the retirement system contains "substantial evidence . . . upon which the agency as the trier of the facts could reasonably find them to be as it did."  Code § 9-6.14:17.  Accordingly, we hold that the record contains evidence that is substantial and adequate to support the agency's decision, and we affirm the judgment.

<u>Affirmed.</u>