# Richmond

## NORFOLK AND WESTERN RAILWAY COMPANY AND SOUTHERN RAILWAY COMPANY v. COMMONWEALTH OF VIRGINIA, AT THE RELATION OF MATHIESON ALKALI WORKS, INC.

April 11, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*Lucian H. Cocke, Jr., H. L. Walker, Theodore W. Reath* and *D. Lynch Younger,* for the appellants.

*Collins Denny, Assistant Attorney-General,* and *John E. Benton,* for the appellee.

PER CURIAM:

The Mathieson Alkali Works, Inc., has its plants at Saltville, Virginia, which is on the Norfolk and Western Railway, thirty-seven miles from Bristol, Virginia.

On August 21, 1931, it filed its complaint before the State Corporation Commission of Virginia, alleging that the rate of $1.80 per ton of 2,000 pounds charged by the Interstate Railroad Company, Southern Railway Company, and Norfolk and Western Railway Company for the transportation over Virginia intrastate routes, in carload lots, of bituminous coal from the mines in the Appalachia group, in Southwest Virginia, which are on the Interstate Railroad and Southern Railway, including mines at St. Charles, Derby and Roda, to Saltville, Virginia, is excessive, unjust and unreasonable, and praying that the Commission establish for future application just and reasonable rates for such service.

The coal from the mines in the Appalachia group which are on the Interstate Railroad moves to Saltville by a three-line haul over the Interstate Railroad, the Southern Railway and the Norfolk and Western Railway. That from the mines in that group which are on the Southern Railway moves to Saltville by a two-line haul over the Southern and the Norfolk and Western railroads. The average distance from all these mines to Saltville is about 116 miles.

The Norfolk and Western Railway Company and the Southern Railway Company filed answers denying that the rate of $1.80 was excessive, unjust and unreasonable, and opposing any reduction.

The Interstate Railroad Company did not appear. The complainant introduced evidence in support of its complaint and of its contention that the rate should not exceed $1.35 per ton. The two respondents introduced evidence to support the contention made in their answers.

On January 17, 1933, the Commission entered its order which reads as follows:

"It is ordered that on and after February 15, 1933, the defendant carriers establish and maintain on bituminous coal, carload, from mines located on the Interstate Railroad and Southern Railway Company in the so-called Appalachia group including mines at St. Charles, Derby and Roda, Virginia, to Saltville, Virginia, a rate not in excess of $1.45 per ton of 2,000 pounds.

"It is further ordered, that the rate of $1.45 per net ton shall not include the emergency charge of six cents per ton which will be in addition to the rate herein prescribed."

The Norfolk and Western Railway Company and the Southern Railway Company filed a petition asking that the Commission reopen the case. Argument was heard by the Commission on this petition on February 10 and 11, 1933, and by a supplemental order entered February 13, 1933, it postponed the effective date of its order of January 17th from February 15th to March 1, 1933.

The Interstate Railroad Company did not join in the petition for a reopening of the case. n the contrary, on February 11th, it telegraphed the Commission as follows:

"Referring to decision Mathieson Alkali case four six eight four understand at argument for reopening on tenth statement was made that Interstate Railroad had authorized representation favoring petition stop We have not extended this authority and really have no objection to the decision as it stands."

On February 24, 1933, the Commission issued its order suspending the effective date of the rate of $1.45 pending the appeal of the case and final action of the Supreme Court of Appeals of Virginia, subject to the conditions of a bond filed under section 156, subdivision (e), of the Constitution of Virginia, and approved by the Commission.

From these orders the Norfolk and Western Railway Company and the Southern Railway Company have appealed, making the following assignments of error:

"1. Said order is unjust, unreasonable and arbitrary in that it requires a rate or charge to be established, maintained and applied by defendants upon bituminous coal in carload lots from the Appalachia group of mines located in Southwest Virginia, including mines at St. Charles, Derby and Roda, Virginia, via intrastate routes, to Saltville, Virginia, of $1.45 per ton of 2,000 pounds, which said rate of charge is unreasonably low and is therefore arbitrary and unlawful.

"2. Said order is illegal and void for the reason that same is founded upon evidence erroneously admitted to the record despite the protest of petitioners.

"3. Said order is illegal and void and contrary to law for the reason that same is not supported by the evidence.

"4. Said order is illegal and void because the rate prescribed is arbitrary and unreasonably low and constitutes a taking of property without due process of law contrary to the provisions of Article I, section 11 of the Constitution of Virginia, and the fourteenth amendment of the Constitution of the United States, the protection of which is invoked."

Upon a careful review of the record we are of opinion that none of the four assignments of error present good ground for setting aside the order of the Commission.

■ Under the second assignment of error the appellants contend that the Commission erred in several particulars in admitting and considering evidence. Their

first contention is that the Commission erred in making the telegram received by it from the Interstate Railroad Company a part of the record and in considering it as evidence in the case. The point they make is that the appellants had no knowledge that this telegram had been received by the Commission until, on April 19, 1933, they received a copy of the Commission's opinion in which it is quoted, did not know it was to be put into the record, and had no opportunity to cross-examine the witness by whom it was introduced in evidence. The telegram was in the nature of a pleading by one of the parties to the proceeding, and was properly made a part of the record. Doubtless it was a mere oversight on the part of the Commission that it was not called to the attention of the appellants. But however that may be, it is plain that the order of the Commission fixing this rate was not in any way based upon this telegram, for the order complained of was entered on January 17th and the telegram was not received until February 11th when the Commission was hearing the petition for a reopening of the case.

The next objection under this heading is that the Commission admitted and considered evidence as to the division made among themselves by the carriers of the existing $1.80 rate. This evidence shows that the rate is divided by the carriers among themselves as follows: On coal originating at the mines on the Interstate Railroad, the Interstate Railroad Company receives twenty-five cents per ton for assembling the traffic and hauling it eight miles; the Southern Railway Company 57.8 cents per ton for hauling it sixty-nine miles to Bristol; and the Norfolk and Western Railway Company 97.2 cents per ton for hauling it thirty-seven miles from Bristol to Saltville. On coal originating at the mines on the line of the Southern Railway Company it receives 82.8 cents per ton for assembling the traffic and hauling it approximately eighty-two miles to Bristol, and the Norfolk and Western Railway Company 97.2 cents for hauling it the thirty-seven miles from Bristol to Saltville.

■ The divisions made among themselves of a joint rate by the participating carriers are not standards by which the justness and reasonableness of the joint rate can properly be measured, for the whole rate may be just and reasonable though some of the divisions may be unreasonable. But in determining the justness and reasonableness of a joint rate it is important to know, as nearly as it can be ascertained, what is the cost to each of the participating carriers of handling the traffic; and evidence of the divisions made of the rate is admissible on this question. In the absence of proof to the contrary, the fair inference is that none of the carriers has accepted as its division a sum less than the cost to it of handling the traffic.

The next objection made under this heading is that the Commission erred in admitting evidence in Exhibits 72, 73, 76, 80, 81 and 82 "on the ground of incompetency and irrelevancy."

■ The appellants had introduced the testimony of witnesses Behring and Keister. Exhibits 72, 73 and 80 were copies of the transcript of the evidence given by these two witnesses in cases pending before other commissions and were introduced to contradict or impeach the testimony given by them in the instant case.

The contention of the appellants with reference to the admission of these exhibits is that section 3723, Code Va. 1919, requires the Commission to "observe and administer the common and statute law rules of evidence as observed and administered by the courts of this Commonwealth, in like manner as complainants and defendants in courts of this Commonwealth," and that these exhibits were not admissible for this purpose because section 6216, Code Va. 1919, had not been complied with. This point is not well made. By its own terms section 3723 applies only to proceedings in which the Commission "shall be called upon to decide or render judgment in its capacity as a court of record." In proceedings relating to the establishment of rates and charges for transportation and

transmission companies the State Corporation Commission is not exercising the functions of a court of record. It is exercising a purely legislative function; and, so far as such matters are concerned, is *the* legislative branch of the government. Section 156, subdivision (b), of the Constitution of Virginia provides that "the authority of the Commission (subject to review on appeal as hereinafter provided) to prescribe rates, charges and classifications of traffic for transportation and transmission companies shall be paramount." That is, in these matters it and not the General Assembly is the legislative branch of the government. As said by Prentis, C. J., in *Chesapeake & Potomac Telep. Co.* v. *Com.*, 147 Va. 43, 136 S. E. 575, 576: "The action of the Commission being so clearly legislative, it would be illogical and inconsistent to hold that the Virginia Commission is limited in its consideration and determination of such cases precisely as it would be if it were a court which has no rate-making or legislative power."

▪ Exhibit 76 is an extract from the brief filed by the appellants in the Interstate Commerce Commission in Docket No. 12,597, which was the case of *Mathieson Alkali Works, Inc., et al.* v. *C. C. & O. Railway Company,* these appellants and others. So far as it was partinent to the questions here in issue it was admissible.

▪ Exhibits 80 and 81 are extracts from the official stenographer's minutes of the hearing before the State Corporation Commission of Virginia in case No. 1223, *Mathieson Alkali Works, Inc., et al.* v. *C. C. & O. Railway Company,* these defendants and others. It was introduced for the purpose of showing that there was no order entered by the Commission in that case approving the increased coal rates which had been put into effect by these carriers. The appellants were contending that such an order had been issued, and this evidence was admissible as bearing upon that question.

▪ But in the instant case, even if it be that, judged by the rules applicable to legislative proceedings, there was

some evidence admitted which the Commission should not have permitted to influence its action, there was ample evidence of an unquestionably proper character to sustain its order. Where this is true, the order of the Commission will not be reversed because it admitted, or admitted and took into consideration, evidence which it should not have considered, unless it be plain that it permitted its conclusions to be determined by the improper evidence; and in the instant case it does not appear that the order of the Commission was controlled by any of the evidence to which objection was made.

The evidence is wholly insufficient to establish that the rate prescribed by the Commission will effect a taking of the appellants' property without due process of law. It is not often that it can be said that any one rate of the great mass of rates of a railroad company is confiscatory.

In the instant case the evidence fails to show that the rate imposed by the Commission will not pay all costs of the service and, if equitably apportioned among the participating carriers, return a profit to all the companies participating in the haul.

In determining what is a just and reasonable rate within the meaning of section 156 of the Constitution of Virginia relating to the rates of public service corporations, a rate may be so low or so high as to be unjust and unreasonable as a matter of law. But between these there is a field, a rather wide field, of legislative discretion as to what is a just and reasonable rate. It is clear, we think, that the Constitution of Virginia vests the State Corporation Commission of Virginia primarily with the power and duty to exercise the legislative discretion of the Commonwealth within these limits; and that upon an appeal this court should not interfere with the exercise, within these limits, of the legislative discretion of the Commission.

The contention made by the appellants that where an appeal is taken from an order of the Commission establishing a rate, the appellants are in all cases "entitled

to the original and indpendent judgment of this honorable court upon the issue presented," is not in accord with either the letter or the spirit of section 156 of the Constitution of Virginia. It is not intended by section 156 of the Constitution that in rate cases this court shall substitute the exercise of its legislative discretion for that of the Commission, except where it is plain from the record that the Commission has transcended the limits of the legislative discretion vested in it.

Our conclusion is that under the evidence in this case the Commission in establishing the rate prescribed in its order of January 17, 1933, has not acted arbitrarily or without substantial evidence to sustain is order, and that in establishing this rate it has acted within the limits of the legislative discretion vested in it by the Constitution. This being true, the order complained of must be affirmed.

*Affirmed.*