**Richmond**

VIRGINIA REAL ESTATE COMMISSION

V.

DORSEY BIAS, BROKER, t/a CAVALIER REALTY COMPANY

October 14, 1983.

Record No. 810884.

Present: All the Justices.

*Richard C. Kast, Assistant Attorney General (Marshall Coleman, Attorney General; Susan R. Stevick, Assistant Attorney General*, on briefs), for appellant.
*Ralph E. Main, Jr.*, for appellee.

RUSSELL, J., delivered the opinion of the Court.

The controlling question in this appeal is whether there was substantial evidence in the record of proceedings before an administrative agency to support its findings.

The Virginia Real Estate Commission, acting upon a complaint against Dorsey V. Bias, a broker, found that Bias had violated its Regulation 8.2(19), which requires a broker or salesman "to promptly tender to the seller every written offer to purchase obtained on the property involved." The commission suspended Bias' license for one year and fined him $1,000.00. Bias appealed the ruling to the Circuit Court of Albemarle County, which reviewed the record and heard arguments of counsel. The court held that the commission's ruling was based upon an "error of law" and that the commission had "improperly admitted" certain evidence. The court vacated the commission's order and remanded the case. The commission appeals.

The essential facts are undisputed. Dorsey Bias is a licensed broker in Charlottesville, trading as Cavalier Realty Company. In 1977, Dr. John Staige Davis was the owner of a tract of 125 acres in Buckingham County. He agreed to sell ten acres to a Mrs.

Rathbone for $15,000.00 to settle a debt, but died before the sale could be effected. His widow, Tolly E. Davis, was aware of the proposed sale to Mrs. Rathbone and intended to honor it. Mrs. Davis was in need of funds, however, and on September 18, 1977, listed the remaining 115 acres with Bias for sale at a price of $75,000. A prospective purchaser, Thomas Wetzel, had visited the farm before the death of Dr. Davis and knew that it contained 125 acres. He discussed the property with John Bias, a son of Dorsey Bias and also a broker with Cavalier Realty Company. Neither John Bias nor Wetzel was aware of the reduction in the acreage offered for sale. At John Bias' suggestion, Wetzel and his wife signed a written offer to purchase the entire 125-acre tract for $60,000. They deposited the written offer in the mailbox of Cavalier Realty on the evening of September 20, 1977. John Bias found the offer the next morning and acknowledged it by letter to Wetzel. He testified that he did not remember what he did with the offer, but his normal practice would have been to place it on his father's desk.

Wetzel inquired about his offer at Cavalier Realty on September 24 or 25. He was informed that it had been rejected. Mrs. Davis never received any offer from Wetzel.

Dorsey Bias was in West Virginia on September 19, 20, and 21. On the morning of September 22, he returned to Cavalier Realty and called Mrs. Davis on the telephone, offering to purchase in his own name, for $50,000, the 115 acres listed with him for sale. When Mrs. Davis indicated her agreement, he prepared contracts both for his purchase and that of Mrs. Rathbone, and mailed them to Mrs. Davis for her signature. He testified that he was then unaware of the Wetzel offer.

Dorsey Bias talked with Mrs. Davis by telephone again on September 24. Mrs. Davis indicated a desire for a higher price, and Bias increased his offer to $53,500. Mrs. Davis agreed to this and promised to alter the price in the written contract, sign it, and return it to him.

Bias testified that he first became aware of the Wetzel offer on September 24, after the telephone conversation with Mrs. Davis, but that he made no effort to communicate it to her because he considered himself to be the contract purchaser and regarded his responsibilities as a broker to be at an end.

Bias received the signed contracts from Mrs. Davis by mail on September 26 or 27. Nevertheless, Wetzel discovered about one

month later that Cavalier Realty was still listing a 20-acre parcel of the original 115-acre Davis property for sale, showing Mrs. Davis as the owner. On October 25, 1977, Wetzel made an offer of $35,000 for this parcel, and later increased it to $38,000. John Bias told him that this offer, too, was rejected. This offer was never communicated to Mrs. Davis. Bias did not acquire title to the 115-acre tract until January 6, 1978. Thereafter, Wetzel discovered that Bias had purchased the Davis property and made complaint to the commission that his offers had never been communicated to Mrs. Davis.

The commission found as facts that Bias "reasonably should have known" of Wetzel's first offer on September 22, that he did know of it on September 24, and that in failing to communicate it, he "represented his personal interests to the detriment of the seller and . . . of the prospective buyers."

In a letter opinion, the circuit court adopted the view that Bias had the right to purchase the property, with full disclosure of his position to the seller, and that "once the broker himself has become a contract purchaser he has no further obligation as a broker . . . . Any misconduct, then, on the part of the broker must be shown to have occurred prior to the coming into existence of the contract of sale and purchase between the seller and broker." Because Bias knew he had become the contract purchaser when he received the signed contracts in the mail from Mrs. Davis on September 26 or 27, the court ruled that evidence of his failure to communicate Wetzel's offers in October was "improperly admitted." The court also observed that the commission had erred in finding that Bias acted to the seller's detriment, since Wetzel's offer was for a sum less than she would realize by selling to Bias and Mrs. Rathbone. The court found no evidence to support a finding of any misconduct by Bias prior to September 27, except "in the area of internal office management, that is, the failure to monitor the incoming telephone calls and mail more carefully."

The circuit court's ruling reflects a misconception of the limited role of a court reviewing a decision by an administrative agency, on the agency's record, pursuant to the Administrative Process Act (Code § 9-6.14:1 *et seq.*). Code § 9-6.14:17 provides in pertinent part:

> When the decision on review is so to be made on such agency record, the duty of the court with respect to issues of fact is

limited to ascertaining whether there was substantial evidence in the agency record upon which the agency as the trier of the facts could reasonably find them to be as it did.

The "substantial evidence" standard, adopted by the General Assembly, is designed to give great stability and finality to the fact-findings of an administrative agency. The phrase "substantial evidence" refers to "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Consolidated Edison Co.* v. *NLRB*, 305 U.S. 197, 229 (1938) (emphasis added). Under this standard, applicable here, the court may reject the agency's findings of fact "only if, considering the record as a whole, a reasonable mind would *necessarily* come to a different conclusion." B. Mezines, *Administrative Law* § 51.01 (1981) (emphasis in original).

Applying these principles to the record made before the commission, it is clear that Wetzel's offer was in the office of Cavalier Realty on September 21 and that Dorsey Bias was present there on the morning of September 22 and during the next five days. Bias admitted having knowledge of the offer on September 24. The commission reasonably could have concluded that he knew of the offer as early as the morning of September 22.

The commission's Regulation 8.2(19) required Bias to tender "promptly" to the seller any offer obtained. A broker has at all times a duty to act with entire good faith toward his principal. This includes an obligation to disclose to the principal all facts within his knowledge which are or may be material, or which might influence the principal in deciding upon a course of action. *Owen* v. *Shelton*, 221 Va. 1051, 1054, 277 S.E.2d 189, 191 (1981); *Duncan* v. *Barbour*, 188 Va. 53, 62, 49 S.E.2d 260, 264 (1948). The commission properly could have found that Bias, acting in his own interest, remained silent about the Wetzel offer for five or six days after he had knowledge of it, even though he could not have known he was a contract purchaser until he received the signed contracts on September 26 or 27. Thus there was ample and substantial evidence to support the commission's finding that he had violated his duty under the regulation. A reviewing court need inquire no further.

The presence or absence of "detriment" to the seller, caused by Bias' non-disclosure, is irrelevant. A broker's duty to communicate an offer promptly to the seller is absolute. It does

not depend upon the broker's evaluation of the offer as advantageous or otherwise. That decision is the seller's alone. The seller might have preferred to deal with Wetzel for reasons unknown to Bias. Further, the forwarding of an offer is merely the opening of what may become an extended course of negotiations. The final price might have borne little resemblance to the initial offer. Wetzel's error, shared by John Bias, as to the acreage offered for sale, was subject to correction in any such negotiations.

Further, we conclude that the commission committed no error of law in receiving evidence that Cavalier Realty still continued to list a part of the 115-acre tract as the property of Mrs. Davis in October, that Wetzel made two offers through Cavalier Realty to buy it, and that the offers were never communicated to her. This evidence tended to contradict Bias by showing the improbability of his contention that he regarded himself, from September 22 on, as a contract purchaser having no further duty as Mrs. Davis' broker. If otherwise admissible, every fact, however remote or insignificant, that tends to establish the probability or improbability of a fact in issue, is relevant and should be admitted. *Epperly* v. *Commonwealth*, 224 Va. 214, 230, 294 S.E.2d 882, 891 (1982).

Even if evidence as to the October transactions had been inadmissible in judicial proceedings, its reception by the commission would not require reversal. The rules of evidence are considerably relaxed in administrative proceedings, and the findings of administrative agencies will not be reversed solely because evidence was received which would have been inadmissible in court. No reversible error will be found in such cases unless there is a clear showing of prejudice arising from the admission of such evidence, or unless it is plain that the agency's conclusions were determined by the improper evidence, and that a contrary result would have been reached in its absence. *See N. & W. Ry. Co.* v. *Commonwealth*, 162 Va. 314, 322-23, 174 S.E. 85, 88 (1934).

For the foregoing reasons, the judgment of the circuit court will be reversed and the order of the Virginia Real Estate Commission reinstated.

*Reversed and final judgment.*