# CIRCUIT COURT OF THE CITY OF RICHMOND

Joyce M. Wickham

v.

Virginia Commonwealth University

May 3, 1991

Case No. HB 248-2

By JUDGE ROBERT L. HARRIS, SR.

A Petition for Review of Domiciliary Status for the Purpose of Receiving In-State Tuition is before the court. After review of the record, it is clear that the denial of domiciliary status by the Residency Appeals Committee was in error. Petitioner has been a Virginia domiciliary since January, 1990.

On January 1, 1990, petitioner married The Reverend William H. Wickham, III, in New York. The Reverend Mr. Wickham began permanent employment as the Rector of St. Michael's Episcopal Church in Bon Air, Virginia, on January 1, 1990. The petitioner and her husband moved to Bon Air, Virginia, on January 3, 1990. They purchased a home as tenants by the entirety and transported the majority of their furniture and other personalty to the new residence on January 3, 1990. A joint checking account was opened at Central Fidelity Bank in Richmond, Virginia, in January, 1990.

At the time of the marriage, petitioner was pursuing studies at Syracuse University toward a Master of Arts degree in Social Work. She had completed the first semester of the program and was scheduled for seven credits in the winter semester. If petitioner failed to return to

Syracuse University in January to complete the scheduled seven credits, she would have lost credit for her first year field placement.

After the move to Virginia, petitioner returned to New York to complete her scheduled courses at Syracuse University. Only a bed and a desk were retained in the apartment where she resided in New York. Between January and May, 1990, petitioner spent varying amounts of time in Virginia. At the conclusion of the winter semester in May, 1990, petitioner closed the New York apartment and transported the remaining personalty to her Virginia residence. From May, 1990, until the present, petitioner has resided without interruption with her husband in the residence purchased in Bon Air, Virginia.

Petitioner applied for domiciliary status for in-state tuition charges at Virginia Commonwealth University. She had enrolled in the VCU School of Social Work, with an anticipated graduation date of May, 1991. Her application claimed that the in-state tuition rate should apply to the Spring 1991 term.

Virginia Commonwealth University denied petitioner's application. The Residency Appeals Committee issued its decision in writing on February 18, 1991. The committee determined that petitioner did not abandon her New York domicile until May, 1990, and therefore, domicile was not established in Virginia until May, 1990, making her ineligible for in-state tuition rates for the Spring term in 1991.

Certain factors from Virginia Code § 23-7.4(B) were cited by Virginia Commonwealth University in support of its denial. Petitioner secured a Virginia driver's license on July 6, 1990. Her motor vehicle was registered in Virginia in July, 1990. Petitioner has never registered to vote in Virginia.

The standard for reviewing the committee's decision is determining whether the decision reached by VCU "could reasonably be said, on the basis of the record, to be supported by substantial evidence and not to be arbitrary, capricious or otherwise contrary to law." Virginia Code Section 23.7.4(H). Under the substantial evidence test, VCU's determination may be rejected only if a reasonable mind would necessarily come to a different conclusion after review of the record. *Virginia Real Estate Commission*

*v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123 (1983). By clear and convincing evidence, petitioner established the intent to make Virginia her domicile in January, 1990.

Domicile is defined by Virginia Code § 23-7.4(A) to be:

> the present, fixed home of an individual to which he returns following temporary absences and at which he intends to stay indefinitely. No individual may have more than one domicile at a time. Domicile, once established, shall not be affected by mere transient or temporary physical presence in another jurisdiction.

*Id.* Domicile is a matter of physical presence and intent.

In January, 1990, plaintiff married a man who had just commenced long term employment in Virginia, purchased a home, which was deeded to them as tenants by the entirety, and moved virtually all of her personalty to Virginia. In January, 1990, plaintiff came to Virginia with the intent to reside here on a permanent basis. Temporary sojourns to the New York apartment which contained only the barest of essentials for the purpose of attending classes, does not defeat plaintiff's contention that Virginia was her domicile.

Virginia Code § 23-7.4(B) provides factors which shall be considered in determining domiciliary intent. The factors listed in Virginia Code § 23-7.4(B) are provided to aid the fact finder in determining domiciliary intent. An individual may have domiciliary intent without meeting each and every factor contained in the statute.

In the case at hand, petitioner had some factors listed in Virginia Code § 23-7.4(B) which favored Virginia domicile beginning January, 1990. Petitioner manifested her intent to abandon her domicile in New York and to make Virginia her fixed home when she purchased a home and moved the majority of her belongings here. Failure to meet all of the factors of the statute did not defeat her intent to be domiciled in Virginia. Denial of domiciliary status of petitioner for the purpose of receiving in-state tuition is not supported by substantial evidence.

Petitioner's eligibility for reduced in-state tuition rates is consistent with this Commonwealth's policy "to

provide for a greater percentage of the costs of education for Virginia's citizens than for the education of other states' citizens . . ." Joint Subcommittee Studying the Issue of Determination of Eligibility for Reduced Tuition Charges in the Commonwealth's Institutions of Higher Education, House Doc. No. 42, 18 (1984). Those who contribute to the Commonwealth financially or socially should benefit from in-state tuition rates. *Id.* at 13-14.

This Court is mindful of the policy reasons underlying reduced tuition rates for in-state residents discussed by the Supreme Court in *Vlandis v. Kline*, 412 U.S. 441 (1973).

> A state university today is an establishment with capital costs of many millions of dollars of investment. It annual operating cost likewise may run into the millions. Parents and other taxpayers willingly carry this heavy burden because they believe in the values of higher education. It is not narrow provincialism for the State to think that each State should carry its own educational burdens . . . [T]he States may restrict subsidized education to their own residents.

*Id.* at 459-460 (Burger, J., dissenting).

> This country's system of higher education presently faces a serious crisis, produced in part by escalating costs of furnishing educational services and in part by sharply increased demands for those services. Because state systems have available to them state financial resources that are not available to private institutions, they may find it relatively easier to grapple with the financial aspect of this crisis. But for this very reason, States have generally felt that state resources should be devoted, at least in large part, to the education of children of the State's own residents, and that those who come from elsewhere to attend a state university should have to make a more

> substantial contribution toward the full costs of the education they would receive.

*Id.* at 464 (Rehnquist, J., dissenting).

This Commonwealth has ample reason to assure that those domiciled here receive the benefit of in-state tuition rates while those domiciled elsewhere pay a higher rate. The decision to afford petitioner the benefit of in-state tuition is consistent with this purpose. She has started a new life in Virginia and expects to remain here indefinitely. Her ties to this Commonwealth are strong. Petitioner has shown by clear and convincing evidence she intended to abandon her New York domicile and to make Virginia her domicile in January, 1990, and is therefore entitled to in-state tuition rates for the spring term 1991.