COURT OF APPEALS OF VIRGINIA


Present:  Judges Baker, Bray and Overton
Argued at Norfolk, Virginia


CAPTAIN DAVID P. HICKMAN
                                   MEMORANDUM OPINION[*] BY
v.      Record No. 2779-97-1        JUDGE NELSON T. OVERTON
                                        JUNE 9, 1998
VIRGINIA BOARD FOR BRANCH PILOTS


          FROM THE CIRCUIT COURT OF THE CITY OF NORFOLK
                   William F. Rutherford, Judge

          Robert F. McDonnell (Reeves W. Mahoney;
          Richard S. Sperbeck; Huff, Poole & Mahoney,
          P.C., on briefs), for appellant.

          Richard B. Zorn, Assistant Attorney General
          (Mark L. Earley, Attorney General, on brief),
          for appellee.


     This case comes to us on appeal pursuant to Code

§ 9-6.14:16.  The Circuit Court of the City of Norfolk affirmed

the decision of the Virginia Board for Branch Pilots (hereinafter

"Board") finding that David P. Hickman (appellant) violated two

of its regulations on November 25 and 26, 1996.  Appellant

contends there is insufficient evidence to support the Board's

findings and the Board failed to comply with its procedures and

regulations because it relied on evidence not in the record.

Because we find sufficient evidence to support the Board's

findings and the Board acted properly in making its findings and

issuing its decision, we affirm.

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

Facts

Appellant is a branch pilot, a licensee of the state agency charged with the responsibility for piloting ships through the coastal waters and ports of the Commonwealth.  See Code § 54.1-910.  A ship bound for a Virginia port must accept a pilot whose duty is to guide that ship to its destination safely. Pilots work in shifts and are "on call" during specific time periods during which they may be called to a ship.  At the time leading to the incident forming the basis for this appeal, appellant's duty period started at 12:00 a.m. on November 26, 1996.

Appellant was taking a number of prescription drugs for various aliments, each of which produced side effects.  Depakote, which treated appellant's headaches, caused gastritis, diarrhea, nausea and dehydration.  Soma, a muscle relaxant, had a sedative effect so that one tablet "can knock a person completely out." Fiorinal with codeine, also for headaches, combined with the other drugs, caused an acute toxic reaction leading to "organic impairment."  Appellant took the Fiorinal with codeine sometime on Monday and Depakote and Soma on Monday night before his duty period.  The record indicates that appellant took his medication as prescribed, but appellant admitted he doesn't normally take Fiorinal before going to work.

Appellant was called to pilot a ship, the MSC Rita, up the James River at 2:00 a.m. on November 26.  He was on the ship for

three hours and completed its passage safely.  Appellant testified he suffered from fatigue, nausea and diarrhea that morning.  After leaving the vessel he went home and, without eating or sleeping, took more Depakote and Soma.  He was called back to work at 8:00 a.m.  Appellant testified that when he reported for duty at the pilot's office he "started to feel bad," becoming sick, shaky, dizzy, tired and incoherent.  Captain Counselman, appellant's supervisor, first asked appellant if he would like someone else to pilot the vessel.  When appellant insisted he was fine, Captain Counselman ordered appellant to go home.

On December 13, 1996 the Board assigned a hearing officer to conduct an informal fact-finding hearing and make recommendations of law and fact pursuant to Code § 9-6.14:11.  The Board reviewed the hearing officer's report and issued its own final opinion and order on February 24, 1997.  The Board ruled appellant violated 18 VAC 45-20-40(5), negligence or misconduct in the performance of duties, and 18 VAC 45-20-40(14), performing or attempting to perform any of the duties of his office while under the influence of alcohol, or any medication (controlled or otherwise) to the extent that he is unfit for the performance of the duties of his office.  The Board found "that accepting an order to pilot a ship while on duty initiates the performance of duties of the Office of Branch Pilot.  A Pilot . . . would not be fit for duty if the Pilot presented his services in an impaired state of mind or

body." Consequently, when appellant took drugs which he knew or should have known would cause incapacitation during his duty period he was negligent in the performance of his duties. Additionally, by piloting the MSC Rita and presenting himself as fit to pilot a second vessel, he performed his duties while under the influence of medication so as to make him unfit for the performance of those duties.

## Sufficiency of the Evidence

Appellant first contends the Board's decision lacks sufficient evidence. See Code § 9-6.14:17(iv). Our "review shall be based solely upon the agency record, and the court shall be limited to ascertaining whether there was evidence in the agency record to support the case decision of the agency acting as the trier of fact." Code § 9-6.14:16. We "may reject the agency's findings of fact only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." Johnston-Willis v. Kenley, 6 Va. App. 231, 242, 369 S.E.2d 1, 7 (1988) (citations omitted).

The record before us clearly supports the agency decision. The Board specifically found appellant's duty was to be fit to pilot a vessel during his duty period. However, appellant was heavily medicated with legal, but powerful, drugs causing him to be severely ill. The Board found appellant was aware of the effects of some drugs and should have been aware of the effects of others. Several doctors testified credibly as to the effects

- 4 -

these drugs had on appellant's body, and appellant himself corroborated this information. The Board's findings that appellant was performing a duty required by a pilot at the time he incapacitated himself was within the "specialized competence" of the Board and is entitled to "special weight." Id. at 244, 369 S.E.2d at 8. In these circumstances, we hold the record fully supports the Board's determination that appellant violated its regulations.

## Compliance with Procedures

Appellant contends the Board failed to comply with required procedures because it considered evidence outside of the record. See Code § 9-6.14:17. Such errors will be reversed only if they do not constitute mere harmless error. See id. "No reversible error will be found . . . unless there is a clear showing of prejudice arising from the admission of such evidence, or unless it is plain that the agency's conclusions were determined by the improper evidence, and that a contrary result would have been reached in its absence." Johnston-Willis, 6 Va. App. at 258, 369 S.E.2d at 16 (citing Virginia Real Estate Commission v. Bias, 226 Va. 264, 270, 308 S.E.2d 123, 126 (1983)). None of appellant's arguments crest this standard.

In the introduction section of the Board's Final Order, it described the duties of a Branch Pilot and noted "[t]he ports of Virginia contain some of the most sophisticated shipping facilities in the world." The Board also noted that, unlike

normal business practice, the captain of a ship entering Virginia waters cannot reject a pilot when he comes aboard, but must accept his pilotage services. See Code § 54.1-910. While these facts appear nowhere in the record, appellant has not demonstrated how they prejudiced his case. We hold their inclusion was harmless.

Appellant also ascribes error to statements made by Captain L.D. Amory, president of the Virginia Pilot's Association, at a special meeting of the Board. Captain Amory stated he believed there were serious questions regarding appellant's abilities which were not addressed at the hearing. He also cautioned the Board to view the evidence in context. Appellant suggests Captain Amory's position as president of the Virginia Pilot's Association automatically prejudiced the Board against appellant. We do not see how innocuous, cautionary statements such as these created bias in the minds of the Board. We hold the Board's exposure to them was not error.

Appellant next contends the Board erroneously characterized appellant as "quite ill" when he appeared for duty. Those who observed appellant and appellant himself testified that he was shaky, dizzy, tired and incoherent and experienced nausea, diarrhea and stomach aches. If anything, the Board minimized, not hyperbolized, the degree of appellant's infirmity. The Board's inclination towards accurate understatement does not amount to a procedural error.

Finally, appellant contends the Board erroneously found that appellant could have requested sick leave if he knew he was ill. Appellant argues the record is devoid of information regarding appellant's ability to take sick leave. Yet appellant himself testified that if he was aware he was sick, "I would have stayed home. I would have said I was sick, put me on the sick list right now." Because appellant provided evidence that he could have taken sick leave, his argument that he did not provide such evidence must be rejected.

## Conclusion

We hold the evidence was sufficient to satisfy the Board's determination that appellant violated both regulations. We further hold the Board complied with all required procedures and that any deviations from them constituted harmless error. Accordingly, the decision of the lower court is affirmed.

<u>Affirmed.</u>