# CIRCUIT COURT OF THE CITY OF NORFOLK

Sentara Norfolk General Hospital

v.

State Health Commissioner et al.

July 8, 1998

Case No. 97-2071

BY JUDGE T. J. MARKOW

This case is before the court on a Petition for Appeal from a decision of the State Health Commissioner which declined to award a Certificate of Public Need ("COPN") to Sentara Norfolk General Hospital ("Sentara") to operate a liver transplant service.

## I. *Factual Summary and Statutory Framework*

On July 31, 1996, Sentara submitted a COPN application to perform liver transplants. The Eastern Virginia Health Systems Agency ("EVHSA") held a public hearing on September 16, 1996. The EVHSA Board met on November 12, 1996, to consider Sentara's application and recommended that the project be approved, despite the fact that the EVHSA staff recommended a denial of Sentara's COPN. The Board found that the project would improve the availability and geographic accessibility of liver transplant services for local residents and held that a liver transplant service would complement the other transplant services already provided by Sentara. On February 28, 1997, the staff of the Department of Health, Division of Certificate of Public Need, recommended that the project be denied. An informal, non-adversarial fact finding conference was conducted by Raymond Perry, Adjudication Officer, on May 20, 1997. Sentara presented evidence regarding its compliance with

the State Medical Facilities Plan ("SMFP"), VR 355-30-105, and the twenty statutory criteria for issuance of a COPN, Va. Code § 32.1-102.3.

Part II, §§ 2.1 through 2.6, of the State Facilities Medical Plan includes provisions on Acceptability, Accessibility (within a two hour drive of 95% of Virginia's population), Availability (no more than one liver transplant program per health planning region), Continuity of Care, Cost (comparable to other similar service providers in the health planning region and the Commonwealth), and Quality (minimum of twelve liver transplants annually; substantially more for successful programs; minimum survival rates of 50-60%; staffing, operations, and support services in place).

After evaluating Sentara's application for consistency with the SMFP criteria, the Commissioner was bound to consider the following criteria pursuant to Code § 32.1-102.3: (1) the recommendation of the EVHSA; (2) the relationship of the project to the SMFP; (3) the relationship of the project to Sentara's long-range development plan; (4) the need that the population to be served has for the liver transplant service; (5) the extent to which the project will be accessible to all residents of the proposed service area; (6) the area, population, topography, highway facilities, and availability of liver transplant services in the proposed health service area; (7) less costly or more effective methods of reasonably meeting identified health service needs; (8) the immediate and long-term financial feasibility of the project; (9) the relationship of the project to the existing health care system of the proposed project area; (10) the availability of resources for the project; (11) the organizational relationship of the project to necessary ancillary and support services; (12) the relationship of the project to the clinical needs of medical training programs in the proposed project area; (13) the special needs of Sentara for a COPN if a substantial portion of its services and/or resources are provided to individuals not residing in the health service area in which the project will operate; (14) the special needs and circumstances of health maintenance organizations; (15) the special needs and circumstances for biomedical and behavioral research projects; (16) the costs and benefits of any proposed construction; (17) the probable impact of the projects on Sentara's costs of, and charges for, providing health care and on the costs and charges to the public for providing health care by other area providers; (18) likelihood for increased competition which serves to promote quality assurance and cost effectiveness; (19) efficiency and appropriateness of using existing services and facilities in the area similar to Sentara's proposed center; and (20) the impact on existing and proposed institutional training programs for students, interns, and residents. Va. Code § 32.1-102.3(B).

The Adjudication Officer found that Sentara's application was consistent with all SMFP criteria. The Adjudication Officer's recommendation for approval of Sentara's application was forwarded to the State Health Commissioner. This recommendation was reviewed in the context of the entire Agency Record, as well as in the context of the Commissioner's professional knowledge of the health care system. The Commissioner rejected the Adjudication Officer's decision for the following reasons:

1. The 1992 SMFP standards regarding minimum transplant volume (twelve) were inaccurate, outdated, inadequate, or otherwise inapplicable in light of current average volumes in the Commonwealth's transplant centers (fifty-two) and among training centers certified by the American College of Surgeons (forty-five).[1]

2. If established, Sentara's liver transplant center may erode the quality of other transplant centers outside its service area by eliminating referrals to the Medical College of Virginia and the University of Virginia. This redistribution of patients would reduce the Commonwealth's liver transplant program below the national average of thirty-six transplants per center. The increased volume of transplant capability might also face a shortage of available transplant organs. Even assuming that Sentara performs its mandatory minimum volume of transplants, this does not indicate a need for additional transplantation programs.

3. If established, the Sentara liver transplant center may seriously impact the continued certification of the established liver transplant fellowship training program at MCV Hospital. *See* Va. Code § 32.1-102.3(B)(20).

## II. *Legal Standard*

Judicial review of agency action may include (as here) a determination of whether there was substantial evidence in the agency record to support its findings of fact. *Bio-Medical Applications of Arlington, Inc. v. Kenley*, 4 Va.

---

[1] The State Health Commissioner concedes that he misinterpreted the training center requirements. Each training fellow must perform forty-five liver transplants as primary surgeon during the *two-year* fellowship program (R-954, 1086). Assuming there is one new fellow each year, as well as an expert surgeon directing the program and performing the majority of procedures during the first year of each fellow's training, the training facilities will exceed forty-five transplants per year. In light of the other figures cited in support of the Commissioner's position, the court finds any error relating to relying on this incorrect training figure to be harmless. *See Johnston-Willis, Ltd. v. Kenley,* 6 Va. App. 231, 258-59 (1988).

App. 414, 427 (1987) (citing *State Board of Health v. Godfrey*, 223 Va. 423, 433 (1982)). "The phrase 'substantial evidence' refers to 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'." *Id.* (citing *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 269 (1983)). The burden of proving a lack of substantial evidence in the record to support the Commissioner's decision is on Sentara. Va. Code § 9-6.14:17. "The Commissioner's decision must show that due consideration was given to the evidence bearing upon those factors which were relevant to the application under consideration" rather than all twenty Code factors. *Bio-Medical Applications of Arlington, Inc.*, 4 Va. App. at 429. The Court must "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purpose of the basic law under which the agency has acted." *Id.*

"A decision to issue or approve the issuance of a [COPN] shall be consistent with the most recent provisions of the [SMFP]; however, if the Commissioner finds, upon presentation of appropriate evidence, that the provisions of such plan are *inaccurate, outdated, inadequate or otherwise inapplicable*, the Commissioner, consistent with such finding, *may* issue or approve the issuance of a [COPN] *or* shall initiate procedures to make appropriate amendments to such plan." Va. Code § 32.1-102.3(A) (emphasis added). The Commissioner's decision on whether the SMFP is inaccurate, outdated, inadequate, or otherwise inapplicable is a discretionary matter within his specialized competence and is entitled to great deference. *See generally Dalton v. United States*, 816 F.2d 971 (4th Cir. 1987) ("may" confers a discretionary power in an agency setting). The court may only interfere where such action is arbitrary and capricious, constituting a clear abuse of the Commissioner's delegated discretion. *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 244 (1988) (citation omitted).

## III. *Discussion*

Sentara alleges that the Commissioner's decision is legally deficient in three major respects: it exceeds the scope of his authority under law; it relies on evidence that does not appear in the record; and it relies on a mistake of fact regarding an alleged adverse impact the project might have on the liver transplant program at MCV.

First, Sentara argues that, since Sentara's application is fully "consistent" with the most recent SMFP provisions, it must be approved by the Commissioner. *See* Va. Code § 32.1-102.3(A) ("Any decision to issue or approve the issuance of a [COPN] shall be consistent with the most recent

applicable provisions of the [SMFP].") This assertion is patently incorrect. If an applicant complies with all criteria in the current SMFP then the Commissioner "may" issue the COPN. If the SMFP is not complied with, then he may not issue the COPN. Compliance does not mandate issuance. If it did, then there would be no need for a Commissioner's judgment and expertise. The court cannot discern that legislative intent from the design of the statute.

The Commissioner found that the SMFP provisions regarding transplant volume were "outdated" and "inadequate" for current conditions circa 1997, even though Sentara's application was admittedly consistent with the current regulations promulgated in 1992. Sentara proposed to perform six liver transplants in year one, twelve transplants in year two, and fifteen in year three (R-134, 119, 278, 418). The SMFP minimum utilization is twelve transplants annually. SMFP § 2.6(A)(1). "Successful transplantation programs are expected to perform substantially larger numbers of transplants annually. Performance of minimum transplantation volumes does not necessarily indicate a need for additional transplantation capacity or programs." SMFP § 2.6(A)(2). The national average volume of transplants per center was thirty-six in 1994 (R-677) and forty-three in 1995 (R-654). Virginia transplant centers performed an average of fifty-two procedures in 1996 (R-660, 834).

The Commissioner did not abuse his discretion in denying the issuance of the COPN. Code § 32.1-102.3(A) is written in the alternative: either the Commissioner "may" (but not must) issue or approve the COPN, *or* he shall (must) initiate amendment proceedings. Here, the Commissioner rejected Sentara's COPN and expressly directed the Division of Certificate of Public Need to initiate a process to update the SMFP regarding liver transplantation services. The Commissioner was acting within the discretionary authority conferred upon him by statute.

Sentara next argues that the Commissioner may not unilaterally amend the SMFP standards and retroactively apply these provisions to the petitioner. "The most recent applicable provision of the [SMFP] shall remain in force until any such chapter is amended, modified or repealed by the Board of Health." 12 VAC 5-220-10. The court finds that the Commissioner neither amended nor retroactively applied the SMFP regarding liver transplants. He merely determined that the SMFP minimum volume requirement was "outdated" and "inadequate" for current conditions, recommended that the Division of Certificate of Public Need initiate the amendment process, and then exercised his discretion to deny Sentara's COPN application.

The petitioner alleges that the Commissioner's finding that "the number of available organs may be reaching a plateau" is unsupported by any evidence in the administrative record. Sentara argues that the number of liver transplants

performed in the Commonwealth and originating from the Tidewater area (Sentara's location) has been growing at an average annual rate of 30%. R-834, 836. The petitioner maintains that the Commissioner's use of extra-record evidence has resulted in substantial prejudice. *United States v. Pierce Auto Freight Lines, Inc.*, 327 U.S. 515, 530 (1946) (administrative agency's consideration of information outside the record does not invalidate its action unless substantial prejudice is shown). In response, the Commissioner argues that his institutional knowledge of the Commonwealth's health care system contributed to his declaration on the maturity of the liver transplant market in Virginia. He found that the number of available organs may be reaching a plateau, which will result in a stabilization of the actual number of transplants performed. Establishing a liver transplant center at Sentara will reduce its referrals to other liver transplant centers (twenty-eight patients[2] were referred outside its service area in 1996 (R-836)), thus reducing their transplant volume and quality of services. The overall result would be to reduce the annual number of liver transplants performed in each Virginia facility below the national average of thirty-six.

The test for substantial evidence is whether "considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Virginia Real Estate Commission v. Bias*, 226 Va. 264, 269 (1983) (citation omitted). The record as a whole contains information on referrals and the transplant volume of competing facilities (both existing programs and training facilities). Combining these documented facts with the Commissioner's institutional knowledge of the availability of transplant organs, a reasonable mind could not necessarily conclude that Sentara's COPN should be approved.

Substantial prejudice has not resulted from the Commissioner's reliance on institutional knowledge and extra-record evidence. As detailed above, the SMFP criteria are a "threshold" that must be overcome before considering the § 32.1-102.3 provisions. The Commissioner found the 1992 SMFP standards on transplant volume to be outdated and inadequate in light of current data. This finding, coupled with a recommendation to amend the requisite number of procedures, was sufficient to deny the COPN. Further discussion of the project's impact on competing facilities, available organs, and training programs was unnecessary, but hardly prejudicial.

---

[2] This number was projected to grow to as many as thirty-seven patients in 1998 (R-838). Each liver transplant performed at Sentara would be one transplant not performed at one of the other facilities in the Commonwealth, thus decreasing the annual volume of competing centers.

Finally, the petitioner argues that the Commissioner's decision relies on a mistake of fact regarding an alleged adverse impact the project might have on MCV's liver transplant program. As discussed in note 1, the court finds this misinterpretation to be harmless error.

In conclusion, the court denies the Petition for Appeal.