# CIRCUIT COURT OF FAIRFAX COUNTY

Georgetown University

v.

E. Anne Peterson,
Commissioner, et al.

January 22, 2001

Case No. (Chancery) 163402

BY JUDGE JOANNE F. ALPER

This matter comes before the Court on Georgetown University's (henceforth "Georgetown") appeal of the denial of a Certificate of Public Need. After hearing oral argument on November 29, 2000, and carefully reviewing the pleadings, briefs, case law, and facts of this case, the Court sets forth its ruling below.[1]

## Factual Background

On November 26, 1997, Georgetown, doing business as Georgetown University Radiation Medicine Associates, filed an application for Certificate of Public Need (henceforth "COPN") with the Virginia Department of Health. The application sought approval of Georgetown's plans to install a linear

---

[1] As required by statute, this case is pending in the Circuit Court of Fairfax County. Pursuant to Va. Code § 32.1-102.1 *et seq.*, the undersigned was designated by the Supreme Court of Virginia to hear and decide the case.

accelerator at Georgetown's Fairfax radiation therapy center. The sole purpose of the linear accelerator was to offer stereotactic radiosurgery (henceforth "SRS") services, a unique, state-of-the-art treatment procedure for cancer patients.

Following preliminary review by the Health Systems Agency of Northern Virginia (henceforth "HSANV") and staff at the Virginia Department of Health's Division of Certificate of Public Need (henceforth "DCOPN"), on September 22, 1998, the Department of Health conducted an informal fact finding conference (henceforth "IFFC"), at which testimonial evidence and additional documents related to Georgetown's COPN application were submitted. The Adjudication Officer received testimony and evidence at the IFFC from the appellant, HSANV and DCOPN staff. The Adjudication Officer issued his Findings, Discussion, and Recommendations, recommending to the Commissioner of Health that the Georgetown COPN application should be denied.

Thereafter, on August 31, 1999, the Adjudication Officer's Findings, Discussion, and Recommendation were adopted *in toto* by the Commissioner, who issued her denial of the Georgetown COPN application. Georgetown now appeals the Commissioner's decision.

## *Standard of Review*

The Virginia Administrative Process Act, Va. Code §§ 9-6.14:1 to 9-6.14:25, governs the review to be applied by a Circuit Court when reviewing an appeal from an administrative agency such as the Department of Health. Va. Code § 32.1-24; *See Roanoke Memorial Hospitals v. Kenley*, 3 Va. App. 599, 352 S.E.2d 525 (1987). The Act provides four bases upon which an appeal to the Circuit Court may be founded: (1) agency failure to accord constitutional right, power, privilege, or immunity; (2) agency failure to comply with statutory authority, jurisdiction limitations, or right as provided in the basic laws; (3) agency failure to observe required procedures where the failure is not mere harmless error; and (4) agency failure to have substantial evidential support for findings of fact. *See* Va. Code § 9-6.14:17.

The Court of Appeals of Virginia summarized the degree of deference to be given to an agency's decision on appeal in *Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 246, 369 S.E.2d 1, 9 (1988):

> Where the issue is whether there is substantial evidence to support findings of fact, great deference is to be accorded the agency decision. Where the issue falls outside the specialized competence of the

agency, such as constitutional and statutory interpretation issues, little deference is required to be accorded the agency decision. Where, however, the issue concerns an agency decision based on the proper application of its expert discretion, the reviewing court will not substitute its own independent judgment for that of the agency but rather will reverse the agency decision only if that decision was arbitrary and capricious. Finally, in reviewing an agency decision, the courts are required to consider the experience and specialized competence of the agency and the purposes of the basic law under which the agency acted.

*Johnston-Willis*, 369 S.E.2d at 9.

It has become the common practice to catalogue and define the limited judicial review of agency decisions pursuant to Va. Code § 9-6.14:17 in the following manner: (1) whether the agency acted in accordance with law; (2) whether the agency made a procedural error which was not harmless error; and (3) whether the agency had sufficient evidential support for its findings of fact. *Id.* at 7. In light of these standards of review, the Court now considers the specific issues raised by Georgetown.

### *Georgetown's Claims against the Commissioner*.

The central factual issue to be determined is whether the Commissioner failed to recognize the basic distinction between SRS and traditional megavoltage radiation therapy, thus infecting her supporting rationale for denial of the COPN.

The record is clear that as opposed to traditional radiation therapy, SRS is an emerging, cutting edge form of therapy which has been proven successful for certain types of patients. This therapy is offered at two other sites in Virginia, neither of which is in Northern Virginia (Charlottesville and Richmond). Georgetown argues that the Commissioner's mistaken determination that the two types of health care services are interchangeable permeates, taints, and ultimately leads to a factually inaccurate and legally erroneous determination that "no public need" exists in Northern Virginia for a linear accelerator dedicated *solely* to the provision of stereotactic radiosurgery.

The Commissioner contends that she *does* recognize the distinction between SRS and traditional megavoltage radiation therapy but that this distinction in no way alters her findings of fact and ultimate decision. She states that, absent a demonstration of public need, new and expensive

technology invariably leads to higher patient cost. The primary purposes of Virginia's health care program are to restrain costs and prevent duplication of health care services so that available resources will be effectively deployed. The Commissioner argues that Georgetown's proposal runs contrary to both purposes and that is the basis for her decision not her failure to distinguish medical equipment.

The Commissioner based her decision on the findings and recommendations of the HSANV and the Adjudication Officer for the IFFC. She cited seven reasons for her denial of Georgetown's COPN:

1. There is substantial surplus radiation therapy capacity in Northern Virginia and no identifiable need for another linear accelerator in the region, even if it should be totally dedicated to providing SRS services.

2. The existing linear accelerator at GRMA\F has comparatively low use and could be used to provide stereotactic radiosurgery (SRS); thus, a second linear accelerator is not needed at GRMA\F should Georgetown determine that it is appropriate to relocate their SRS services to the site.

3. The GRMA\F site is a less than appropriate setting for the services proposed by the applicant because it does not have immediate access to CT and MRI equipment on site and it would be far better if such services were located centrally in a major medical center setting, where ancillary and support services would be immediately accessible.

4. The proposal is far more costly than just the cost of readying the vault to accept the already-owned linear accelerator, as the applicant represented, and implementation of it would be likely to result in lower patient volumes at nearby facilities and a higher unit cost of providing radiation therapy in the region.

5. There is substantial opposition to the proposal among local providers who would be affected negatively by two linear accelerators being located at the GRMA\F site.

6. The proposal is not consistent with the Virginia State Medical Facilities Plan.

7. The proposal was recommended to be denied by the Health Systems Agency of Northern Virginia.

In a fourteen-page recommendation, the Adjudication Officer detailed what SRS is, how it is used, where it is used (in Virginia and neighboring states), and the clear distinction between SRS and traditional megavoltage therapy. He listed the twenty general criteria for determining need, found in Va. Code § 32.1-102.3. In addition, he methodically detailed the relationship of Georgetown's proposal to each of the twenty COPN criteria. He noted the

findings of HSANV, which recommended that the COPN be denied for the identical reasons listed above. He further stated:

> I have reviewed the application and heard from the applicant and various experts that it has offered in support of its application, I have reviewed the analyses provided by the Health Systems Agency of Northern Virginia and the Division of Certificate of Public Need, and I have reviewed the recommendation of the Health Systems Agency of Northern Virginia and the rationale it used to support its recommendation. Upon consideration of all of the information relevant to this matter, I have concluded that the application should be denied.

After a thorough review of the record, the pleadings, and the facts in this case, it is clear that the Commissioner fully recognized the distinction between SRS and traditional megavoltage radiation therapy. In fact, her very first reason for denial of Georgetown's COPN indicates that she *did* recognize this distinction and still found that there is no public need for this type of equipment in Northern Virginia. In her words, "[t]here is substantial surplus radiation therapy capacity in Northern Virginia and no identifiable need for another linear accelerator in the region, *even if it should be totally dedicated to providing SRS services.*" Clearly, she recognized that SRS services are distinct from those provided by the traditional linear accelerator. Yet, notwithstanding this distinction, she found no public need and went on to list six other reasons in support of her decision (a decision reached not only by the Commissioner, but by the HSANV and IFFC, respectively). Accordingly, the Court finds Georgetown's argument that the Commissioner's decision was somehow tainted by her failure to recognize the basic distinction between SRS and traditional megavoltage therapy is without merit.

Next, we turn to the issue of whether the Commissioner's decision to deny the COPN is supported by substantial evidence in the record. Georgetown challenges the findings of the Commissioner, stating that the Commissioner consistently and erroneously ignored (or failed to understand) the evidence presented. Georgetown asserts there was clear error in the Commissioner's analytical process and that she made findings of fact and conclusions not supported by credible evidence of record.

As the Court reviews the record and the arguments asserted in this issue, the Court is mindful of the governing standard of review, which is well defined in the Virginia Code and case law. The agency, and not the Court, is the fact-finder in the case.

The trial court reviews the facts of the case as determined by the Commissioner because it is required to determine as a matter of law whether there is substantial evidence to support the Commissioner's decision. Va. Code § 9-6.14:17. The substantial evidence rule gives stability and finality to the fact-finding of the administrative agency. Substantial evidence refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Virginia Real Estate Commission v. Bias*, 226 Va. 264, 269, 308 S.E.2d 123, 125 (1983) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 216, 83 L. Ed. 126 (1938)). Under this standard the court may reject the findings of fact of the agency "only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Id.* (quoting B. Mezines, Administrative Law § 51.01 (1981)).

*Roanoke Memorial Hospitals v. Kenley*, 3 Va. App. 599, 610, 352 S.E.2d 525, 531 (1987).

The determination of an issue of fact is to be made solely on the basis of the whole evidentiary record provided by the agency and the reviewing court is limited to that agency record. Code § 9-6.14:17; *Godfrey*, 223 Va. at 433, 290 S.E.2d at 880. "A reviewing court may not, however, use its review of an agency's procedures as a pretext for substituting its judgment for the agency on factual issues decided by the agency." *Id.* at 434, 290 S.E.2d at 881 (citations omitted). A reviewing court "must review the facts in the light most favorable to sustaining the [agency's] action," *Bio-Medical Applications of Arlington, Inc. v. Kenley*, 4 Va. App. at 414, 417, 358 S.E.2d 722, 729 (1987), and "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." *York Street Inn*, 220 Va. at 313, 257 S.E.2d at 853.

*Johnston-Willis, Ltd. v. Kenley*, 6 Va. App. 231, 263, 369 S.E.2d 1, 18 (1988).

Applying these guiding principles to the entire record, the Court finds that there was substantial and relevant evidence sufficient to support the Commissioner's decision. The Adjudication Officer's report contained sixteen findings of fact and a general discussion of the proposal. The report addressed the consistency of Georgetown's proposal with the State Medical Facilities Plan (henceforth "SMFP"), the utilization of radiation therapy units in

Northern Virginia, the access residents have to this type of treatment, and the twenty statutory factors enumerated in Va. Code § 32.1-102.3. The Court does not need to recite every fact and every conclusion reached by the Commissioner. Rather, the Court must review those facts and conclusions central to the Commissioner's decision and review the issues raised by appellant Georgetown in its Brief.

First, Georgetown argues that the Commissioner failed to understand the clinical nature of SRS, leading to the erroneous conclusion that SRS is covered by the State Medical Facilities Plan. According to Georgetown, the Commissioner, absent any evidentiary support, arbitrarily and inconsistently concluded that SRS is equivalent to "gamma knife surgery." And as a result, the Commissioner mistakenly concluded that the portion of the SMFP related to "gamma knife surgery" ought to be applied to the review of this project. The Commissioner argues that Georgetown's proposed project involves the addition of megavoltage radiation therapy equipment, whether it is restricted to SRS or not. Therefore, the standard for radiation therapy equipment as set forth in the SMFP applies to the proposed project.

Additionally, the SMFP includes standards for the review of gamma knife projects (12 VAC 5-340-80 through 5-340-120), including the establishment of new sites for the delivery of gamma knife services. A gamma knife is a radiation therapy device designed exclusively for the provision of SRS. Since the SMFP criteria and standards for "gamma knife surgery" were developed, other methods of performing SRS have been created. The Commissioner argues that Georgetown's proposal represents one of the new methods created but is simply a variation on an old procedure. She further argues that while there are not SMFP standards specifically designed for the review of the introduction of a dedicated SRS unit using a linear accelerator, there is no reason that the same utilization standards for the gamma knife method do not properly apply.

By all accounts, there seem to be no SMFP standards specifically designed for the review of the introduction of SRS using a linear accelerator. However, using a method of logical analysis, the Adjudication Officer concluded that the standard applicable to the gamma knife is also applicable to the proposed linear accelerator. Additionally, Georgetown's proposal clearly involves the addition of megavoltage radiation therapy equipment (irrespective of its intended use). Again, using a method of logical analysis, the Adjudication Officer concluded that the standard for radiation equipment as set forth in the SMFP does apply to the proposed project. Accordingly, taking due account of the experience and specialized competence of the agency, the Court finds there is substantial and relevant evidence in the record

to support the Commissioner's decision. Certainly, the Court cannot say a reasonable mind would necessarily come to a different conclusion.

Next, Georgetown argues that the Commissioner failed to understand the "utilization projection analysis" presented with regard to the existing linear accelerator at the Fairfax site. The Commissioner concluded that if Georgetown wished to provide SRS at the Fairfax site, it could do so on the site's existing linear accelerator. Georgetown asserts that, in reaching this conclusion, the Commissioner failed to consider uncontroverted testimony that this accelerator would be (and now, was) fully utilized by September 1999.

The Commissioner argues that the evidence in the record, including Georgetown's own application, supports her conclusion that the existing linear accelerator is underutilized. The HSANV reported that current use of the existing accelerator was about 40% of the average linear accelerator volume in Northern Virginia, less than 25% of the average use of the other five linear accelerators operated by Georgetown elsewhere in the metropolitan area, and only about 25% of the operating level standard in the Virginia SMFP.

The Court has reviewed the testimony of Ms. Carol Moore, as well as that of Dr. Dritschilo, who both stated that the existing accelerator at the Fairfax site would be at maximum use within one year, based on their progression analysis. The Court has also reviewed the evidence relied upon by the Commissioner, which suggested the existing accelerator was underutilized. The HSANV reported that the demand for radiation therapy services has been stable for the last five years, suggesting that there would likely be no future need for additional radiation therapy services in Northern Virginia. The record reflects that, at the very least, there is competing evidence on this issue. It is the role of the fact-finder (the Commissioner in this case) to weigh the evidence and rule according to that which is most persuasive. Mindful of the fact that the role of the Court is not to substitute its judgment for that of the Commissioner, the Court finds that there is substantial and relevant evidence in the record to support the Commissioner's decision. Furthermore, upon consideration of the record as a whole, again, the Court cannot say a reasonable mind would necessarily come to a different conclusion.

Finally, Georgetown has raised other issues, which it claims support its position that the Commissioner erred in denying the COPN. Although the issues are certainly debatable, upon review of the facts in the light most favorable to sustaining the Commissioner's action and taking due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted, the Court is not persuaded that these claims would cause a reasonable mind to come to a different conclusion.

Based on the foregoing, the Court affirms the decision of the Commissioner to deny the COPN.