## CIRCUIT COURT OF THE CITY OF NEWPORT NEWS

New B, Inc.,
t/a The Alley

    v.

Virginia Department of
Alcoholic Beverage Control

August 5, 2009

Case No. (Civil) 09/01097-V04

BY JUDGE H. VINCENT CONWAY, JR.

This matter is before the court on the appeal of New B, Inc., t/a The Alley ("The Alley "or the "club") from a decision of the Virginia Alcohol Beverage Control Board ("Board"), dated June 19, 2009, revoking its ABC licenses. This action was taken by the Board upon a finding that The Alley "is so located that violations of the ABC Act or the laws of the Commonwealth relating to peace and good order have resulted from issuance of the license and operation thereunder by you in violation of Sections 4-31(a)(2)(b) and 4-37(A)(3) and 4-34(d) of the ABC Act." In its order, the Board adopted the findings of the hearing officer and concluded that fights had occurred at the establishment on four occasions between December 2007 and September

2008. The only factual statement in the order regarding the four charges is "the incident of July 27, 2008, resulted in a conviction of assault and battery upon a police officer, and the most recent incident resulted in the wounding of an individual, as the combatants continued the battle a few miles away and a shot was fired as a handgun came into play."

When the Board seeks to revoke a license on the ground that the establishment is "so located" that violations of ABC laws or other laws of the Commonwealth relating to peace and good order have occurred, the law provides a legal framework for analysis and requires that two findings be made: first, that violations have in fact occurred; second, that there exists some nexus between the violations and the location of the establishment, other than the fact that the incidents occurred at that site. *Atkinson v. Virginia ABC Comm'n*, 1 Va. App. 172, 336 S.E.2d 527 (1985). The location, in and of itself, or the operation thereof at such location must be shown to be a relevant factor in the violations to prove that the establishment is "so located" that violations of law have resulted from the issuance of the license and operation thereunder. When the applicable law is applied to the facts of this case, this court concludes that, while violations of peace and good order have been shown, there is no substantial, relevant evidence to connect these incidents to the location of The Alley, other than that is where they occurred.

Consistent with *Atkinson, supra,* the Board notified the licensee of the specific reasons for the proposed revocation and listed four charges to support its position that The Alley is "so located" that violations of law have resulted from its operation and that some nexus existed between these incidents and its location.

*Incident # 1, December 13, 2007*

At 11 a.m. on such date, a female contacted the Newport News Magistrate to report an assault some ten hours earlier at 1 a.m. at The Alley. The victim reported that she had been in a fight with two other females and that she had been slapped. She reported that security guards inside the establishment broke up the confrontation. With the assistance of the police and a yearbook, one of the assailants was identified; the evidence was stipulated upon trial as sufficient to convict, and the matter remains pending on a withheld finding. No arrests were made for any violation of ABC laws or for any other law violation at the site.

*Incident # 2, June 2, 2008*

An off-duty police officer working outside security in the parking lot of The Alley approached a male sitting on the ground near an exit door. The man said he hit his head on part of the building while exiting the club and declined further assistance. The officer was of the opinion that the man was intoxicated and called EMS to assure that there were no injuries. At this same time, about 10 people came out of the doors, some yelling, shouting. The officer assumed that there had been an argument or altercation inside. Other people started coming out. Whether caused by some incident inside or because it was getting near closing time, the officer called for backup to assist with crowd control. All those exiting dispersed without incident. No arrests were made for any violation of ABC laws or other laws of the Commonwealth.

*Incident # 3, July 27, 2008*

A female security guard at The Alley had ended her relationship with her boyfriend. The ex-boyfriend drove to Newport News from Maryland and went to the club. He walked into the club, confronted his former girlfriend, and struck her in the face. He was escorted out by inside security. Outside, he was told by an off duty police officer to leave the property. After leaving and then coming back, he was approached by the same officer, who put her hand in or on the car. The driver then sped off, was stopped by police, and charged with trespassing and assault and battery on a police officer for striking the officer's hand. Upon trial, he received a thirty day sentence, with the balance suspended on condition of good behavior. The arrest made in this incident would not appear to be connected to the club, other than location, and no other arrests were made for any violation of ABC laws or other laws of the Commonwealth.

*Incident # 4, September 13, 2008*

Five females were removed by inside security because of an altercation. Three females had started a fight with the other two. Outside, club security put the two females being harassed in a cab and let the other three females leave in their vehicle. Some three miles away, when the two females exited the cab, they were confronted by the other three females who had followed them in their car. A male, not related to this incident up to this point in time or connected with the club, approached the two females now being surrounded by the three females and handed a gun to one of the two females. Waiving the

gun back and forth to ward off her attackers, the gun accidentally discharged, hitting an innocent bystander who had approached the scene out of curiosity, since she knew the female with the gun. No charges were filed, since the female injured said the incident was an accident, and no arrests were made for any violation of ABC laws or other laws of the Commonwealth.

In Incidents ## 1, 3, and 4, no evidence was presented regarding the consumption of alcohol; no evidence was presented concerning any action or inaction of the club operator which contributed to the event; no evidence was presented that the operator's response to the incident was improper, delayed, or exacerbated the situation, and no evidence was presented that the location of The Alley was connected to the incidents, other than by occurrence, or in any way promotive of, triggered, or otherwise causally involved in some manner with the incidents. In Incident # 2, the officer was of the opinion that the man who had hit his head was intoxicated, and the hearing officer and the Board must have accepted that conclusion. This court then will accept that finding; however, there is no evidence concerning any improper action or inaction by the operator which contributed to the event, or how, when and where this individual consumed any alcohol. What we do know is that no arrests were made for any violation of ABC laws, being drunk in public, obstruction of justice, driving under the influence, or any other laws of the Commonwealth.

As related to all of these incidents, no evidence exists that alcohol was served to someone obviously inebriated; no evidence exists that alcohol was served to anyone underage; no evidence exists that security personnel failed to respond or did so improperly; no evidence exists that the operator was lackadaisical in response or otherwise unconcerned; and no evidence exists to connect these incidents to any fault or neglect by the operator of the establishment or to the location itself, other than occurrence.

The law is clear that decisions of an administrative agency are entitled to great weight with deference being required to the expertise of those who regularly deal with these issues throughout the Commonwealth. On appeal, the evidence is viewed in the light most favorable to sustaining the actions of the Board, and the court must "take due account of the presumption of official regularity, the experience and specialized competence of the agency, and the purposes of the basic law under which the agency has acted." Va. Code § 9-6.14:17; *Virginia A.B.C. Commission v. York Street Inn, Inc.*, 220 Va. 310, 313, 257 S.E.2d 851, 853 (1979).

Furthermore, the scope of review on appeal is limited to whether there is "substantial evidence in the agency record" to support the decision. *State Board of Health v. Godfrey*, 223 Va. 423, 290 S.E.2d 875 (1982). The phrase

"substantial evidence" refers to "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Virginia Real Estate Comm'n v. Bias*, 226 Va. 264, 308 S.E.2d 123 (1983) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). The court may reject the agency's findings of fact "only if, considering the record as a whole, a reasonable mind would necessarily come to a different conclusion." *Bias*, 226 Va. at 269, 308 S.E.2d at 125 (quoting B. Mezines, *Administrative Law*, § 51.01 (1981)). This standard is designed "to give great stability and finality to the fact-finding process of the administrative agency." *Bias*, 226 Va. at 269, 308 S.E.2d at 125.

What a reasonable person would conclude, however, must be determined by an analysis of the applicable law and standards. Facts alone do not force conclusions, but must be measured against applicable standards of review. Substantial evidence does not refer to volume of material, but to relevancy. For evidence to be relevant, the applicable law must be examined to determine the proof requirements necessary to support a certain conclusion. If *Atkinson* requires that, in addition to violations of law, some connection between those violations and the location of the incidents be demonstrated, other than occurrence, then substantial evidence regarding location alone is not relevant or sufficient to support the finding required for revocation.

No one disputes the importance of assuring that peace and good order are maintained, but *Atkinson* requires that some nexus exist between the incident and the location, other than that it simply happened there. None of these incidents are endemic to The Alley or appear limited in geographic range to such establishment. Based on the evidence, any of these incidents could have occurred at any number of other locations, without the resulting consequence that the business be shut down.

Counsel for the Board makes several arguments in support of the second prong of Atkinson, to wit, the demonstration of some nexus between the incident and the location other than its occurrence. It is contended that, since violations continue to occur, the location must be conducive to or involved causally with such violations. Without evidence to support this conclusion, however, this is but another way of stating that the location must be causing these events. *Atkinson* requires more than that one simply show where the event occurred and then presume causation. The fact that one event exists or precedes another does not prove that the former caused the latter. To follow this approach is to ignore the second prong of *Atkinson*, not to meet it, and avoids the requirement that substantial evidence exist to demonstrate the connection between the violations and the location or operation of the licensee, other than mere occurrence.

Counsel also presents a "but for" argument, which, while a helpful analytical approach in certain areas of the law, appears to be without logic and raises more issues than it resolves. It is contended that "but for" the club, no one would have been shot (Incident # 4). "But for" the club, no one would be assaulted (Incidents # 1 & # 3). Not only does this argument presume a number of things which cannot be known and certainly are not in evidence, but it also is another way of stating that it is the "location." The *Atkinson* standard of showing something beyond location is not met by this analysis, which asks one to assume causality based on existence. There is no evidence that there is some endemic connection between these incidents and this location or that the violations were promoted by or initiated by anything at the location.

In its decision, the Board mentions Incident # 3 and Incident # 4, presumably to highlight the behavior being addressed and its focus. The fact that an ex-boyfriend drives down from Maryland and assaults his former girlfriend, a security officer at the club, and after being escorted out by security, then drives in and out of the parking lot several times and is arrested for striking an officer's hand and trespass, appears to be significantly attenuated from the location or the operation of the club. It was the location of the ex-girlfriend, not the club, which determined the *situs* of this incident, and the ex-boyfriend's response to the police officer is not connected to anything at the club or its operation.

Incident # 4 is described by the Board as "the wounding of an individual, as the combatants continued the battle a few miles away and a shot was fired as a handgun came into play." It will suffice to state that this would appear to be an excessively negative and strained interpretation of the events which transpired. The females who were in the altercation were separated and placed in separate vehicles. A cab was called for two of the females who did not have transportation. All of the participants left the location of The Alley. There is no evidence that any threats were made or any reason to believe that this incident had not been concluded. A number of intervening decisions then occurred, having nothing to do with The Alley, where and when to exit the cab; whether to pursue the cab, whether to confront the two females who exited the cab, whether to accept a handgun offered by a stranger passing by, whether to attempt to use the weapon to ward off presumed attackers, and whether to act in such a manner so as to accidentally discharge the weapon, striking a bystander, who had approached the confrontation to see what was going on. To reach the conclusion that this incident occurred because the club, operating under its license, is "so located," and that such incident is connected to its location, other than being the *situs* of the initial altercation, is unreasonable and not supported by evidence.

At the hearing on the Board's motion to dismiss, counsel for the Board surmised that perhaps the club was too large and that this fact could be related to the problems. There is no evidence in the record or any expert testimony to support this conjecture, and something more than an intuitive feeling is required by *Atkinson*. It was also suggested that alcohol was involved, perhaps more than this court appeared to appreciate. That is understood by the nature of the establishment, but the evidence needs to show something more than service of alcohol. The Board exists to regulate the service of alcohol, so that endeavor is not unlawful; however, there is no substantial evidence in this record pertaining to these four charges which would support a conclusion that the improper service of alcohol is involved in these charges.

One aspect of the Board's decision of June 19, 2009, is especially disturbing and raises issues of fundamental fairness and due process. The law is clear that a licensee must be clearly informed of the charges upon which the Board seeks to suspend a license, and four charges were clearly set forth to justify the Board's position that The Alley is so located that violations of law have resulted. Then, in its opinion, going beyond the charges named, the Board, adopting the hearing officer's approach, states that "the analysis of this case must begin with the prior order of the Board, entered, May 8, 2006," when the Board temporarily suspended the license of The Alley based on a number of charges, generally pertaining to persons being drunk in public, causing a disturbance in the surrounding neighborhood, and fights in the parking lot. The Board then concludes, without evidence that the prior incidents bear any similarity to the four charges being considered, that "the nature of the location has not changed."

First, how are due process standards met when one begins a consideration of the current charges with an analysis of prior charges? Second, how does a respondent present a defense to the pending charges before a body which, after the hearing has been concluded, begins its analysis with prior charges already punished? There are nine sentences in the Board's decision discussing prior offenses and what occurred in 2006, before three sentences are used to conclude that the current charges have been established. The troubling effect of this approach is to negatively affect the analysis regarding the four pending charges and diminish defense evidence concerning the matters charged. This is not mere harmless error.

While conceding that the history between the Board and The Alley may be relevant to the eventual disposition of this case, it is not a substitute for whether or not evidence exists to support the charges now made. The "analysis" must begin with the current charges and not, as the Board states, with prior matters. This court is familiar with using the history and record of a

defendant or respondent to arrive at a proper disposition or sentencing judgment after a finding of guilt or liability; however, the history or prior incidents of a defendant or respondent are not to be considered to determine either guilt or innocence in the matter being then considered. The matter at issue must be decided before prior incidents may be reviewed for appropriate disposition, and that is not what occurred in this case.

In its finding that the "nature of the location has not changed" since 2006, the Board apparently did not accept or discounted testimony concerning the increased security now being provided inside, the hiring of off-duty police officers for outside security, the installation and use of the metal detectors to prevent weapons from being brought in, the earlier closing times and the increased age for admittance. While the Board may allow such weight as it deems appropriate to this evidence, its decision to discount or ignore it does not create affirmative evidence in the record detailing how the location of the club or its operation is related to or promotive of the four incidents charged. The operator is not a guarantor of proper conduct, and some connection must be shown between the conduct and the location or operation of the establishment. To begin the analysis of the current charges with a recitation of prior problems and conclude that the nature of the location has not changed is to fundamentally ignore the primary requisite that the respondent be advised of the charges for which it must answer and on which it will be judged and that such judgment in fact take place on those matters.

In conclusion, the issue on this appeal is whether there is substantial evidence to support the revocation of the ABC licenses of The Alley on the four charges made. Accepting the finding that the facts show several violations of the law as it relates to peace and good order, the required connection or nexus between these violations and the location or operation of The Alley, as required by applicable law, is not established by substantial, relevant evidence.

Accordingly, it is ordered that the licenses suspended or revoked based on the Board's decision of June 19, 2009, as related to the four charges pending before this court, be reinstated and restored without delay.